PEOPLE v GOECKE

PEOPLE v BAKER

PEOPLE v HOSKINSON

Docket Nos. 105878, 106433, 108961. Argued October 7, 1997 (Calendar Nos. 2, 3, 19). Decided June 2, 1998.

Jason A. Goecke was charged in the 50th District Court with second-degree murder and an alternative count of operating a motor vehicle under the influence of intoxicating liquor, causing the death of another person. The court, Leo Bowman, J., bound the defendant over on the alternative charge. The Oakland Circuit Court, Hilda R. Gage, J., granted the prosecutor's motion to amend the information to reinstate the second-degree murder charge. The Court of Appeals, DOCTOROFF, C.J., and McDONALD and J. B. SULLIVAN, JJ., reversed in an opinion per curiam, holding that a prosecutor who seeks review of a district court's decision not to bind over a defendant must bring an appeal. It further found no abuse of discretion in the district court's refusal to bind the defendant over on the murder charge (Docket No. 177417). The people appeal.

Richard A. Baker was convicted by a jury in the Genesee Circuit Court, Robert M. Ransom, J., of two counts of second-degree murder as a result of colliding with a vehicle while drunk, after failing to stop for a red light at an intersection while speeding and causing the deaths of the vehicle's occupants. The Court of Appeals, NEFF, P.J., and D. A. JOHNSTON, J. (SMOLENSKI, J., concurring in part and dissenting in part), reversed in the light of *People v Goecke*, and held that the prosecution had failed to show that the defendant performed an act in wilful and wanton disregard that its natural tendency was to cause death or great bodily harm. The Court reasoned that additional evidence was necessary concerning the defendant's state of mind for a second-degree murder conviction to be affirmed on appeal, and concluded that evidence of drunk driving and attendant erratic driving behavior, alone, cannot support a finding of malice (Docket No. 176907). The people appeal.

James Hoskinson was convicted by a jury in the Detroit Recorder's Court, Craig S. Strong, J., of second-degree murder for striking and killing a four-year-old child with his car, while drunk, as she was riding her tricycle on the sidewalk. The Court of Appeals,

DOCTOROFF, C.J., and WAHLS, J. (SMOLENSKI, J., dissenting), reversed in an unpublished opinion per curiam and remanded the case for entry of a judgment of conviction of involuntary manslaughter, finding that insufficient evidence of malice had been produced at trial (Docket No. 185220). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice MALLETT, and Justices WEAVER and TAYLOR, the Supreme Court *held*:

Where a district court binds a defendant over on one of two counts, review of the dismissed count is obtainable by a motion to amend the information. The circuit court does not have discretion to deny review on the ground that the prosecution was required to file an application for leave to appeal. In *Goecke*, the district court's failure to bind over on charges of second-degree murder was an abuse of discretion.

1. The circuit court is a court of general jurisdiction, having original jurisdiction in all matters not prohibited by law. Subject matter jurisdiction is presumed unless expressly denied by constitution or statute. It is the right of the circuit court to exercise jurisdiction over a class of cases, such as criminal cases. In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination or before whom the defendant was examined. Having once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed. Following a preliminary examination, the district court in *Goecke* denied the prosecution's motion to bind the defendant over on charges of second-degree murder and instead bound the defendant over on the alternate charge of OUIL, causing death. The return having been filed, the circuit court had subject matter jurisdiction over the class of case and personal jurisdiction over the defendant.

2. MCL 770.12; MSA 28.1109 was designed to put prosecutor's appeals on the same grounds of availability as that of a defendant, except where precluded by jeopardy. There is no basis to conclude that the Legislature intended to substitute the appellate process as the exclusive method to obtain circuit court review of the bindover decision. Where jurisdiction has vested in the circuit court, the only legal obstacle to amending the information to reinstitute an erroneously dismissed charge is that amendment would unduly prejudice the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend. Where a preliminary examination is held on the very charge that the prosecution seeks to have reinstated, the defendant is not unfairly surprised or deprived of adequate notice or a sufficient opportunity to defend at trial.

3. The elements of second-degree murder include a death, caused by an act of the defendant, with malice, and without justification or excuse. The malice at issue in these cases involves the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, i.e., depraved-heart murder. Malice reflects the principle that criminal culpability must be tied to the actor's state of mind. An intent to do an act in obvious disregard of life-endangering consequences is a malicious intent. Because depraved-heart murder is a general intent crime, the accused need not actually intend the harmful result; malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm. In enacting the OUIL, causing death, statute, MCL 257.625; MSA 9.2325, the Legislature made clear that any person who operates a motor vehicle while under the influence of intoxicating liquor and causes the death of another person is guilty of a felony punishable by imprisonment for not more than fifteen years. That the OUIL, causing death, statute does not limit the ability of the prosecution to charge an intoxicated driver with common-law offenses such as murder does not eliminate the people's burden of proving beyond a reasonable doubt that the defendant engaged in wanton misconduct. These cases involve a level of misconduct that goes beyond that of drunk driving. Under either a subjective or an objective standard, sufficient proofs were presented to support a bindover on the charge of second-degree murder in *Goecke* and to sustain the defendants' convictions in *Baker* and *Hoskinson*.

4. The prosecution's motion in *Goecke* to amend the information to reinstate defendant's second-degree murder charge was proper, as was the amendment. The prosecution was not required to file an application for leave to appeal from the magistrate's bindover decision. A motion to amend the information pursuant to MCR 6.112(G) is a proper vehicle to secure review where some but not all of the charges originally brought are dismissed by the examining magistrate.

*Goecke*, *Baker*, and *Hoskinson* reversed and remanded.

Justice KELLY, joined by Justices BRICKLEY and CAVANAGH, concurring in part and dissenting in part, stated that in order for a person who drives while intoxicated and causes the death of another to be charged and convicted of second-degree murder, the prosecutor must establish that the defendant was subjectively aware of the dangerous nature of the act, and that the natural tendency of the act was to cause death or great bodily harm.

The elements of second-degree murder are a death, caused by the defendant, with malice, and without justification or excuse. To be convicted of murder, a defendant in a drunk driving case must be subjectively aware of the high risk that conduct creates. To secure a bindover on a second-degree murder charge, the prosecutor must submit evidence from which it can be inferred that the defendant was subjectively aware that the action was dangerous and that the probable result or natural tendency of the act was to cause death or great bodily harm.

A defendant cannot be bound over on a second-degree murder charge without proof of state of mind. The requisite mental state for second-degree murder may not be inferred solely from the fact that a defendant drove while intoxicated. Death or great bodily harm is not the natural tendency or probable result of drunk driving. Driving while intoxicated, coupled with reckless driving, can support a bindover for and conviction of second-degree murder. It may be inferred from certain evidence, e.g., time of day, length of the trip, speed traveled, route taken, recklessness of the driving, the defendant's actions following the accident, degree of intoxication, and the defendant's drunk driving history, that an intoxicated driver is subjectively aware that his actions probably will result in death or great bodily harm.

By adopting a subjective approach, voluntary intoxication would not be a defense in these cases. Any claim that intoxication can negate the defendant's subjective awareness should be rejected. Second-degree murder is a general intent crime, to which intoxication is not a defense. A subjective awareness element in second-degree murder cases does not create a specific-intent crime. To be subjectively aware of the consequences of one's actions is not the same as specifically intending to cause death.

The objective standard essentially adopted by the majority could result in all drunk driving cases causing death being submitted for trial on second-degree murder charges. The prosecution has the discretion to bring charges it deems appropriate. On the basis of the majority opinion, there is little to prevent a prosecutor from charging every defendant allegedly causing such an accident with both second-degree murder and operating a motor vehicle while under the influence of intoxicating liquor, causing the death of another person.

In *Goecke*, the evidence presented at the preliminary examination revealed that the defendant drove his automobile while intoxicated and above the speed limit, ran a red light, and hit another vehicle. There was no evidence that he became subjectively aware that his actions probably would result in death or great bodily harm. His

statement after the accident, admitting that he was drunk and that he was speeding, did not provide evidence of his state of mind. What must be determined was his awareness at the time the accident occurred, not after the fact. There also must be unity between the act and the defendant's state of mind. In this case, there was no unity that would permit a finding of malice. The district court did not abuse its discretion in refusing to bind the defendant over on a charge of second-degree murder after finding insufficient evidence of malice.

In *Baker*, there was insufficient evidence to sustain a conviction of second-degree murder. The evidence revealed that the defendant was intoxicated, was speeding, and ran a red light. However, there was insufficient evidence that he subjectively knew that the natural tendency of his actions likely would result in the death or great bodily harm of another person.

215 Mich App 623; 547 NW2d 338 (1996) reversed and remanded.
216 Mich App 687; 551 NW2d 195 (1996) reversed and remanded.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Interim Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people in *Goecke*.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Research, Training and Appeals, for the people in *Baker*.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people in *Hoskinson*.

*Mark G. Butler* for defendant Goecke.

*Denise D. Couling, Terrance P. Sheehan,* and *Joseph J. Farah* for defendant Baker.

*Daniel J. Rust* for defendant Hoskinson.

Amici Curiae:

*William Forsyth,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

*P. E. Bennett* for Criminal Defense Attorneys of Michigan.

BOYLE, J. In *People v Goecke,* we granted leave to decide two issues: (1) whether the district court abused its discretion in refusing to bind defendant over on a second-degree murder charge, and (2) whether the circuit court properly granted the prosecution's motion to amend the information to reinstate the second-degree murder charge. In *People v Baker* and *People v Hoskinson,* we granted leave to determine whether the evidence was sufficient to uphold defendants' second-degree murder convictions.

In *Goecke,* we reverse the decision of the Court of Appeals. We reject the conclusion that the circuit court must obtain jurisdiction through an appeal as of right or an application for leave to appeal to review the magistrate's decision to dismiss some but not all felony charges. Jurisdiction vests in the circuit court when a return is filed by the magistrate. Neither statute nor court rule requires the prosecutor to appeal from the magistrate's refusal to bind defendant Goecke over on charges of second-degree murder.

The prosecution's motion to amend the information was proper and the circuit court did not err in granting that motion. We also hold that there was sufficient evidence to bind defendant Goecke over on the charge of second-degree murder. In *Baker* and *Hoskinson*, we find that the evidence supported the juries' findings of guilt.

## I. FACTS AND PROCEEDINGS

### A. *PEOPLE v GOECKE*

Six witnesses called at the preliminary examination[1] gave a factual basis for the finding that on November 11, 1993,[2] at 7:00 P.M., defendant and a friend met at a liquor store in Troy where they purchased beer. From 7:00 P.M. until 8:30 P.M., the defendant and his friend drank beer as they sat in the parking lot of the liquor store. Defendant consumed approximately seven to nine bottles of beer. When a police cruiser drove into the parking lot, the defendant and his friend drove off, with defendant driving, in order to find another place to drink. The two drank

---

[1] Because this case has not yet been tried, the facts are taken from the testimony given at the preliminary examination.

[2] Judicial notice is taken of the fact that November 11, 1993, fell on a Thursday.

A court may take judicial notice of facts not noticed below, whether requested or not, at any stage of the proceeding. MRE 201(c), (e). Judicial notice may be taken of facts that can be accurately determined by sources of unquestionable reliability. MRE 201(b) provides:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

beer as they drove around the area, waiting for the police to leave the parking lot.

Several hours later, at approximately 11:30 P.M., the defendant and his friend were driving on Wide Track Drive near Cass Road in the city of Pontiac. Wide Track Drive is a main thoroughfare through the city of Pontiac and is a five-lane southbound highway, with four lanes for through traffic and one turn lane.[3] One witness testified that he first noticed the defendant when the defendant's car came "flying" past his car, nearly hitting his van. Defendant's speed was estimated at approximately seventy to eighty miles an hour.[4] According to the testimony, this witness attempted to drive up to the defendant's vehicle to advise the defendant that he almost hit the witness' van and that he should slow down.

Defendant's passenger on the night of November 11, 1993, also testified at the preliminary examination and indicated that the defendant may have driven through a red stoplight at the intersection just before the intersection of Wide Track Drive and Orchard Lake Road. As the defendant neared the intersection of Wide Track Drive and Orchard Lake Road, one witness stated that the stoplight was either yellow or red. A second witness testified that the stoplight was red. The defendant ran through the stoplight and struck an eastbound vehicle in the intersection. The other motorist died of injuries from the

---

[3] The Bureau of the Census, United States Department of Commerce, through the federal-state cooperative program for population estimates, estimated that the population of the city of Pontiac in July, 1993, was 71,426.

[4] The record does not indicate the speed limit at that location; however, a witness testified that his own speed was approximately forty miles an hour as he drove through the area.

collision. Approximately fifteen to twenty empty beer bottles were observed on the floor of the defendant's car, and defendant's blood-alcohol level was measured at 0.17 percent. At the scene of the accident defendant admitted that he was to blame for the accident, stating:

> I really fucked up. I was going way too fucking fast. I have had to[o] fucking much to drink. . . . I have really fucked up bad this time. I was going way too fast. . . . [I]t was all my fault, I should not have been driving. I know I'm drunk.

The defendant was charged with second-degree murder, MCL 750.317; MSA 28.549, and operating a motor vehicle under the influence of intoxicating liquor, causing the death of another person, MCL 257.625(4); MSA 9.2325(4). Following preliminary examination, the district court denied the prosecutor's motion to bind defendant over on the second-degree murder charge, stating that, while defendant's behavior was "reprehensible," there was no evidence of the intent needed to support a murder charge. Instead, the court bound defendant over on the alternative charge of OUIL, causing death.

The prosecutor filed a motion in circuit court seeking to amend the information to reinstate the second-degree murder charge. Defendant asked that the motion be denied, arguing that the prosecution should have proceeded by appeal and that a motion to amend the information was an improper means of gaining review of the district court's decision. The circuit court granted the motion to amend, finding that defendant's alleged intoxication, speeding, and disregard of traffic signals raised a question of fact for the

jury regarding the intent element of second-degree murder.

The Court of Appeals reversed, holding that the circuit court lacked jurisdiction to review the district court's bindover decision where a timely appeal as of right or an application for leave to appeal was not filed in the circuit court.[5] The Court found no abuse of discretion in the district court's refusal to bind defendant Goecke over on the murder charge. We granted the prosecution's application for leave to appeal.[6]

### B. *PEOPLE v BAKER*

On July 21, 1988, at approximately 11:30 P.M., defendant Baker was driving a pickup truck south on Grand Traverse Road in the city of Flint. The speed limit was thirty-five miles an hour. Witnesses estimated that defendant was traveling between sixty and seventy miles an hour. Defendant failed to stop for a red stoplight at the intersection of Grand Traverse Road and Atherton Road. He collided with the victims' vehicle, which was on Atherton Road properly crossing the intersection with the green light. Both occupants in the victims' car were killed. Approximately three hours after the accident, defendant's blood-alcohol level was 0.18 percent.

---

[5] 215 Mich App 623, 627-628; 547 NW2d 338 (1996). The Court stated:

[A] circuit court may not consider an appeal of the district court's decision not to bind a defendant over on a specific charge when the prosecution moves to amend the information without filing either an appeal as of right or an application for leave to appeal. [*Id.* at 628.]

[6] 454 Mich 853 (1997).

Defendant was convicted of two counts of second-degree murder, MCL 750.317; MSA 28.549. The Court of Appeals reversed the judgment, holding that there was insufficient evidence of defendant's state of mind to support a finding of malice, and that evidence of drunk driving and the reckless driving behavior that often goes with it could not, without more support a finding of malice.[7] We granted the prosecutor's appli-

---

[7] In dissent, Judge SMOLENSKI found that, viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented that defendant acted in wanton and wilful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. 216 Mich App 687, 697; 551 NW2d 195 (1996). Judge SMOLENSKI described the testimony in *Baker* as follows:

The collision in this case occurred at the intersection of Grand Traverse and Atherton Roads in Flint. Grand Traverse proceeds north and south while Atherton proceeds east and west. There is an I-475 exit that feeds traffic onto southbound Grand Traverse approximately three hundred to four hundred feet before Grand Traverse intersects with Atherton. Both Grand Traverse and Atherton are four-lane highways with a posted speed limit of thirty-five miles per hour. At the time of the collision, a double-headed traffic signal was located at the intersection that cycled red, yellow, and green for both roads. Road conditions at the time of the collision were dry and the traffic signals were operating normally.

The collision occurred on July 21, 1988, at approximately 11:30 P.M. when defendant's vehicle, which was traveling south on Grand Traverse at between sixty and seventy miles per hour, failed to stop at a red light on Grand Traverse and broadsided the victims' vehicle, which was eastbound on Atherton. Alcohol was detected on defendant's breath at the scene of the collision. Approximately three hours after the collision, a blood sample was taken from defendant and a test indicated that defendant's blood alcohol level was 0.18 percent. . . .

Evidence was presented that defendant's residence was located on Grand Traverse approximately one mile south of the intersection. Thus, viewing this evidence in a light most favorable to the prosecution, the jury could have inferred that at the time of the collision defendant was heading home and, more importantly, that he was familiar with the area, including the existence of the intersection at Grand Traverse and Atherton and the traffic signal at that intersection.

cation for leave to appeal.[8]

## C. *PEOPLE v HOSKINSON*

On July 3, 1994, defendant Hoskinson and some friends were drinking beer and working on defendant's automobile. At approximately 7:00 P.M., defend-

---

Evidence was also presented concerning the extreme force of the collision. During the collision, defendant's vehicle rode up on top of the victims' vehicle. The victims' vehicle eventually overturned and came to rest on its top. The female victim was found lying on the road. One of the female victim's arms was completely severed and also found lying on the road. The responding police officer testified that he could not ascertain signs of life from either victim. Thus, viewing the evidence in a light most favorable to the prosecution, the jury could have inferred that defendant had been traveling at a speed even greater than sixty to seventy miles per hour, as estimated by witnesses. . . .

At trial, [Kerrie] Kachel testified that on the night of the collision she was driving east on Atherton when she proceeded through a green light at the intersection of Atherton and Grand Traverse. Kachel testified that her fiancee was following her in another car and that a vehicle was also traveling beside her vehicle. Kachel testified that when her vehicle was approximately three-quarters of the way through the intersection, she saw a pair of headlights coming toward her from a vehicle traveling on Grand Traverse. Kachel testified that the vehicle was traveling at a high rate of speed and was not stopping for the red light on Grand Traverse. Kachel testified that she estimated that the vehicle was traveling faster than sixty-five miles per hour on the basis of the humming of its tires, which she could hear even though her windows were up, and the suddenness with which the vehicle appeared to be coming through the intersection. Kachel testified that she was afraid that the vehicle would hit her. Kachel testified that she passed through the intersection and then heard a loud crash behind her. Kachel testified that the vehicle passed within three feet of her vehicle and between her vehicle and her fiancee's vehicle, which was following approximately one car length behind her. Viewing this evidence in a light most favorable to the prosecution, the jury could have found that defendant had been able to see both the red light on Grand Traverse and the vehicles in the middle of the intersection on Atherton. The jury could have further found that defendant did not attempt to stop, but instead continued speeding through the intersection. [*Id.* at 694-697.]

[8] 454 Mich 894 (1997).

ant and his friends drove to a bar where they drank beer and shots of liquor for approximately two hours. Defendant was staggering when he left the bar. Testimony indicated that defendant may have refused the offer of one of his friends to drive. Defendant twice drove his vehicle into a parked car while trying to leave the parking lot. He next drove through a residential neighborhood at speeds of approximately forty to sixty miles an hour. Speed dips were located at almost every intersection throughout this neighborhood. Defendant had driven down this street numerous times and was aware of the speed dips.

A vehicle traveling westbound just ahead of the defendant was stopped at a stop sign. Defendant swerved into the eastbound lane and passed the stopped vehicle, and then immediately swerved back into the westbound lane in order to avoid hitting an oncoming vehicle. Defendant hit a speed dip and lost control of his vehicle. He hit the westbound curb, swerved left, then swerved right, and struck a car parked on the right side of the street. Defendant jerked his wheel to the left, accelerated, drove across the eastbound lane, over the curb, and across some grass where he hit four-year-old Miranda Andres who was riding her tricycle on the sidewalk. Miranda's body was dragged across two lawns before defendant's automobile returned to the street.[9] Defendant continued to drive before bringing his vehicle to a stop approximately six blocks from the victim's home.

---

[9] After the accident, defendant's passengers told the defendant that he had struck a child, and then they jumped from the moving vehicle and ran away.

An officer who was called to the accident scene testified that defendant approached him and admitted that he was the driver. A blood alcohol test disclosed that defendant's blood alcohol level was 0.22 percent. In a statement to the police, defendant admitted that he knew he was drunk when he left the bar and that he was driving too fast. Testimony indicated that before the accident occurred the occupants of defendant's car told defendant to slow down.

The jury convicted defendant of second-degree murder, MCL 750.317; MSA 28.549, and failure to stop at a serious personal injury accident, MCL 257.617; MSA 9.2317. The Court of Appeals reversed the conviction and remanded for entry of a judgment of conviction of involuntary manslaughter, finding that insufficient evidence of malice had been produced at trial.[10] We granted the prosecution's application for leave to appeal. 454 Mich 922 (1997).

## II. ANALYSIS

### A. *PEOPLE v GOECKE*

We first address the procedural issue. The prosecution contends that where a district court binds a

---

[10] Unpublished opinion per curiam of the Court of Appeals, issued March 4, 1997 (Docket No. 185220).

Judge SMOLENSKI dissented, stating:

> Viewing this evidence in a light most favorable to the prosecution, I believe that a rational trier of fact could find that a person who has been told that he is driving too fast but who, while darting in and out of traffic, nevertheless continues to knowingly speed with the awareness that he will encounter portions of the roadway that are constructed with obstacles in the road surface designed to reduce speed performs an act "in wanton and willful disregard that the natural tendency of the act is to cause death or great bodily harm."

defendant over on one of two counts, review of the
dismissed count is obtainable by a motion to amend
the information. Defendant argues that the prosecutor
must formally appeal to the circuit court in order to
challenge the district court ruling. We agree with the
prosecution.

1

The refusal to bind defendant Goecke over on
charges of second-degree murder and the subsequent
bindover on the charge of OUIL, causing death, was
not a final order appealable under MCL 770.12; MSA
28.1109.[11] The magistrate's decision to bind the
defendant over on less than all the charges was not a

---

[11] MCL 770.12; MSA 28.1109 provides in relevant part:

(1) Except as provided in subsection (2), the people of this state
may take an appeal of right in a criminal case, if the protection
against double jeopardy under section 15 of article I of the state
constitution of 1963 and amendment V of the constitution of the
United States would not bar further proceedings against the
defendant, from either of the following:

(a) A final judgment or final order of the circuit court or
recorder's court, except a judgment or order of the circuit court or
recorder's court on appeal from any other court.

(b) A final judgment or order of a court or tribunal from which
appeal of right has been established by law.

(2) The people of this state may take an appeal by leave in a
criminal case, if the protection against double jeopardy under sec-
tion 15 of article I of the state constitution of 1963 and amendment
V of the constitution of the United States would not bar further
proceedings against the defendant, from any of the following:

(a) A judgment or order of the circuit court or recorder's court
that is not a final judgment appealable of right.

(b) A final judgment entered by the circuit court or the
recorder's court on appeal from any other court.

(c) Any other judgment or order appealable by law or rule.

(d) A judgment or order when an appeal of right could have
been taken but was not timely filed.

(e) A final order or judgment based upon a defendant's plea of
guilty or nolo contendere.

final order[12] and the prosecution was not authorized to take an appeal of right.[13] Assuming, arguendo, that the prosecution was required to proceed by filing an appeal, the only appeal process available would be an application for leave pursuant to subsection 12(2)(c).[14]

It is unnecessary to dispute whether the magistrate's bindover decision was appealable by leave as provided under MCL 770.12(2)(c); MSA 28.1109(2)(c) and MCL 600.8342(2); MSA 27A.8342(2). Given that there is no basis to conclude that the prosecution was required to proceed by application for leave to appeal, there is no need to resolve whether this method of review is available to the prosecution.

The Court of Appeals reasoned that the prosecution must proceed by an appeal as of right or an application for leave to appeal, but offered no reason to conclude that the Legislature intended to supplant the court rule. MCR 6.112(G) provides:

---

Appeals to circuit court are specifically authorized under MCL 600.8342; MSA 27A.8342, which provides in part:

(1) Appeals from the district court shall be to the circuit court in the county in which the judgment is rendered.

(2) Except as provided in subsections (4) and (5), all appeals from final judgments shall be as of right and all other appeals shall be by application.

[12] A final judgment or order "puts an end to a suit or action." Black's Law Dictionary (rev 4th ed), p 979; see also Barron's Law Dictionary (3d ed), p 257 (a final judgment or order conclusively determines the rights of the parties and disposes of the controversy before the court). See, generally, *People v Torres*, 452 Mich 43; 549 NW2d 540 (1996).

[13] See n 11. In criminal cases, the state is authorized to take an appeal of right from a final judgment or order of a court or tribunal "from which appeal of right has been established by law," or file an application for leave to appeal from "[a]ny other judgment or order appealable by law or rule." MCL 770.12(1)(b), (2)(c); MSA 28.1109(1)(b), (2)(c).

[14] See n 11.

> The court before, during, or after trial may permit the
> prosecutor to amend the information unless the proposed
> amendment would unfairly surprise or prejudice the
> defendant.

Thus, the court rules allow the prosecution to have such a motion heard by the trial court and specifically authorize the circuit court to permit the prosecutor to amend the information.

We conclude that the prosecution may seek review of the magistrate's findings under these circumstances by filing a motion to amend the information and that the circuit court does not have discretion to deny review on the ground that the prosecution was required to file an application for leave to appeal.

a

The circuit court is a "court of general jurisdiction," MCL 600.151; MSA 27A.151, having "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art 6, § 13.[15] Subject matter jurisdiction is presumed unless expressly denied by constitution or statute, *Bowie v Arder*, 441 Mich 23, 38; 490 NW2d 568 (1992). It is the right of the court to exercise jurisdiction over a class of cases, such as criminal cases.[16] In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination, *In re Elliott*, 315 Mich 662, 675; 24 NW2d 528

---

[15] See also MCL 600.601; MSA 27A.601.

[16] See also *People v Johnson*, 427 Mich 98, 106, n 7; 398 NW2d 219 (1986); *Joy v Two-Bit Corp*, 287 Mich 244, 253; 283 NW 45 (1938) (subject matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending).

(1946), or "before whom the defendant had been examined." *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 119; 215 NW2d 145 (1974). Having once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed. *In re Elliott, supra* at 675.

Following a preliminary examination, the district court in *Goecke* denied the prosecution's motion to bind the defendant over on charges of second-degree murder and instead bound the defendant over on the alternate charge of OUIL, causing death. The return having been filed, the circuit court had subject matter jurisdiction over the class of case and personal jurisdiction over the defendant. Had no return been filed, the circuit court would not have acquired jurisdiction over the case or the accused. *People v Evans*, 72 Mich 367, 387-388; 40 NW 473 (1888). In such a case, the prosecution would be required to file an appeal if charges were dismissed because that is the only way the case could come within the jurisdiction of the circuit court.

MCL 767.76; MSA 28.1016 provides that the court may amend an information at any time before, during, or after trial.[17] The rules of criminal procedure as

---

[17] MCL 767.76; MSA 28.1016 provides:

No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. *The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence.* If any amendment be made to the substance of the indict-

adopted in 1989 implement then existing law to provide that the court may permit the prosecutor to amend the information unless to do so "would unfairly surprise or prejudice the defendant." MCR 6.112(G). Thus, a conclusion that a motion to amend the information is not permitted would violate this Court's directive that the court rules supersede any statutory procedure pertaining to and inconsistent with an established procedural rule.[18]

It is unnecessary, however, to conclude that the statute and court rule are inconsistent. MCL 770.12; MSA 28.1109 was designed to put a prosecutor's appeals on the same grounds of availability as that of a defendant, except where precluded by jeopardy.[19]

---

ment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury. In case a jury shall be discharged from further consideration of a case under this section, the accused shall not be deemed to have been in jeopardy. No action of the court in refusing a continuance or postponement under this section shall be reviewable except after motion to and refusal by the trial court to grant a new trial therefor no writ of error or other appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the reviewing court shall find that the accused was prejudiced in his defense or that a failure of justice resulted.

[18] MCR 6.001(E) provides in part:

The rules in this chapter supersede all prior court rules in this chapter and any statutory procedure pertaining to and inconsistent with a procedure provided by a rule in this chapter.

[19] We note that motions to quash are routinely filed in circuit court by defendants from a decision by the magistrate to bind over on a charge. This is done without filing a claim of appeal or application for leave to

The requirements attendant to filing timely applications supported by written briefs introduce procedural obstacles that are not imposed on defendant's seeking review of the magistrate's decisions, MCR 6.106(H); MCR 6.110(H),[20] and are contrary to the clear legislative objective. Substituting the appellate process would not only attenuate the convenient, speedy, and inexpensive review by motion, it would also tend to insulate the bindover decision from circuit court scrutiny, a result that would likewise frustrate the presumed intent of the Legislature. In short, there is no basis to conclude that the Legislature intended to substitute the appellate process as the

---

appeal. Because MCL 770.12; MSA 28.1109 was designed to ensure that a prosecutor's and a defendant's appeals are on equal grounds of availability, the Legislature clearly could not have intended to truncate the prosecution's ability to file a motion to amend the information for purposes of reviewing a magistrate's bindover decision anymore than it intended to truncate a defendant's right to file a motion to quash an indictment from the magistrate's bindover decision.

[20] MCR 6.106(H) provides in relevant part:

(1) A party seeking review of a release decision may file a motion in the court having appellate jurisdiction over the court that made the release decision. There is no fee for filing the motion. The reviewing court may not stay, vacate, modify, or reverse the release decision except on finding an abuse of discretion.

\*     \*     \*

(2)(b) . . . At the defendant's arraignment on the information and afterwards, the court having jurisdiction of the defendant may, on the motion of a party or its own initiative, make a de novo determination and modify a prior release decision or reopen a prior custody hearing.

MCR 6.110(H) provides:

If, on proper motion, the trial court finds a violation of subrule (C), (D), (E), or (F), it must either dismiss the information or remand the case to the district court for further proceedings.

exclusive method to obtain circuit court review of the bindover decision.

b

Jurisdiction having vested in the circuit court, the only legal obstacle to amending the information to reinstitute an erroneously dismissed charge is that amendment would unduly prejudice the defendant because of "unfair surprise, inadequate notice, or insufficient opportunity to defend." *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993).[21] Where a preliminary examination is held on the very charge that the prosecution seeks to have reinstated, the defendant is not unfairly surprised or deprived of adequate notice or a sufficient opportunity to defend at trial, and defense counsel here does not so claim. The evidence introduced on charges of second-degree murder would also be used to support the charge of OUIL, causing death. In addition, because the standard of review is abuse of discretion, the defendant is protected by the time-honored principle that the circuit court may not substitute its judgment for that of the magistrate.

The traditional means for reviewing the prosecution's claim that the magistrate erred in dismissing some but not all of the charges is provided by the rules of this court, is consistent with the legislative purpose, and serves the institutional needs of the criminal justice system. The circuit court did not have discretion to decline to entertain the motion.

---

[21] The fact that there was sufficient proof presented at the preliminary examination to support a bindover on a charge of second-degree murder is discussed in part II(A)(3).

2

The substantive issue in *Goecke* is whether the district court abused its discretion by not binding the defendant over on the charge of second-degree murder.[22] We hold that the district court's failure to bind over on charges of second-degree murder was an abuse of discretion.

a

Murder is a common-law offense, defined as the unlawful killing of one human being by another with malice aforethought. *People v Garcia*, 398 Mich 250, 258; 247 NW2d 547 (1976); *People v Potter*, 5 Mich 1, 6-7 (1858).[23] The elements of second-degree murder

---

[22] As a preliminary matter, the prosecutor argues that the Legislature did not intend to preclude the prosecution from filing second-degree murder charges when it enacted the OUIL, causing death, statute. MCL 257.625(4); MSA 9.2325(4). We agree. Under the statute, the Legislature provided that a person who operates a motor vehicle under the influence of intoxicating liquor and causes the death of another person is guilty of a felony, punishable by imprisonment of not more than fifteen years. MCL 257.625(4); MSA 9.2325(4).

In *People v Lardie*, 452 Mich 231, 246; 551 NW2d 656 (1996), we found that the OUIL, causing death, statute was not enacted to codify the common law. Rather, it was intended to reduce the number of alcohol-related traffic fatalities and deter drivers who were willing to risk penalty from drinking and driving. *Id.* at 257. By enacting the statute, the Legislature did not limit the ability of the prosecution to charge an intoxicated driver with common-law offenses such as involuntary manslaughter or murder. *Id.* at 247, n 23.

[23] The Legislature has separated the crimes of first-degree murder and second-degree murder by statute. MCL 750.316; MSA 28.548 defines first-degree murder as follows:

(1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:

(a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.

(b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled sub-

are: (1) a death, (2) caused by an act of the defend-
ant, (3) with malice, and (4) without justification or
excuse. *People v Bailey*, 451 Mich 657, 669; 549 NW2d
325 (1996).

Malice is defined as the intent to kill, the intent to
cause great bodily harm, or the intent to do an act in
wanton and wilful disregard of the likelihood that the
natural tendency of such behavior is to cause death
or great bodily harm. *People v Aaron*, 409 Mich 672,
728; 299 NW2d 304 (1980). The malice element for
depraved heart murder is general mens rea.[24] It is the
third form of malice at issue in the cases presented.

b

The prosecution urges us to adopt an objective
standard for the third form of malice, asserting that
to do otherwise would define second-degree murder
in terms of a specific-intent crime and would afford
relief to an intoxicated offender in the form of a vol-
untary intoxication defense. We decline to do so. We
have previously held that second-degree murder is a
general-intent crime to which voluntary intoxication
is not an available defense. *People v Langworthy*, 416
Mich 630, 651; 331 NW2d 171 (1982). Only a highly

___

stance offense, robbery, breaking and entering of a dwelling, home
invasion in the first or second degree, larceny of any kind, extor-
tion, or kidnapping.

Second-degree murder is defined as:

All other kinds of murder shall be murder of the second degree,
and shall be punished by imprisonment in the state prison for life,
or any term of years, in the discretion of the court trying the same.
[MCL 750.317; MSA 28.549.]

[24] The definition of malice attempts to describe the common-law term
"depraved-heart murder." See LaFave & Scott, Criminal Law (2d ed), § 7.4,
p 617.

unusual case would require a determination of the
issue whether the defendant was subjectively aware
of the risk created by his conduct. 2 LaFave & Scott,
Substantive Criminal Law, § 7.4(b), p 205.[25] Because
none of the consolidated cases is such a case, we
reject the invitation to reach the issue and instead
hold that, under either a subjective or an objective
standard, sufficient proofs were presented to support
a bindover on the charge of second-degree murder in
*Goecke* and to sustain the defendants' convictions in
*Baker* and *Hoskinson*.[26]

---

[25]     [M]ost depraved-heart murder cases do not require a determina-
tion of the issue of whether the defendant actually was aware of
the risk entailed by his conduct; his conduct was very risky and he
himself was reasonable enough to know it to be so. It is only the
unusual case which raises the issue—where the defendant is more
absent-minded, stupid or intoxicated than the reasonable man.

[26] The prosecution asserts that whether a defendant must be subjec-
tively aware of the degree of risk his conduct creates in order to be
charged and convicted of second-degree murder is not entirely clear.
According to the prosecution, the third form of malice has been defined in
terms of an objective standard as the "wanton and willful disregard of the
likelihood that the natural tendency of [a] defendant's behavior is to cause
death or great bodily harm." *Aaron, supra* at 728. In *People v Dykhouse*,
418 Mich 488, 495; 345 NW2d 150 (1984), however, the prosecution con-
tends that the third form of malice was defined in subjective terms as "the
intent to create a very high risk of death or great bodily harm with the
knowledge that death or great bodily harm is the probable result." The
prosecution contends that if the state is required to prove that the defend-
ant had the intent to place others at risk when he decided to drive while
intoxicated, second-degree murder would constitute a specific-intent
crime and voluntary intoxication would become a viable defense. We do
not reach the issue whether the third form of malice requires a subjective
or objective intent because sufficient evidence exists under either stan-
dard to support a bindover in *Goecke* and to support the convictions in
*Baker* and *Hoskinson*. Since, irrespective of whether malice is defined in
terms of subjective or objective intent, voluntary intoxication is not an
available defense, *Langworthy, supra* at 651, no issue was created under
the state of these proofs that would require the trial court to resolve the
subjective/objective question. The jury was correctly instructed that it
must find malice beyond a reasonable doubt.

c

As a necessary element of second-degree murder, malice reflects the principle that criminal culpability must be tied to the actor's state of mind. *Aaron, supra.* However, as we have repeatedly held, the mens rea for second-degree murder does not mandate a finding of specific intent to harm or kill. *Bailey, supra* at 669.[27] The intent to do an act in obvious disregard of life-endangering consequences is a malicious intent.[28]

Because depraved-heart murder is a general intent crime, the accused need not actually intend the harmful result. One way of expressing this concept is that malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm.

> In the absence of any circumstance of exculpation or mitigation an act may be done with such heedless disregard of a harmful result, foreseen as a likely possibility, that it differs little in the scale of moral blameworthiness from an actual intent to cause such harm. At times such a state of mind is said to be "the same as if defendant had deliberately intended the act committed" . . . [and] is one way of expressing the fact that it is sufficient to meet the requirements of "malice." Another method is to suggest that while such an act is not done with an actual intent to cause the harm, it is "constructively with a malicious intention." . . . [O]ne may be guilty of other offenses for which malice is

---

[27] See also *People v Datema,* 448 Mich 585, 607; 533 NW2d 272 (1995); *People v Langworthy, supra* at 650-651.

[28] See Perkins & Boyce, Criminal Law (3d ed), ch 2, § 1, p 60 (the intent to do an act in wanton and wilful disregard of the obvious likelihood of causing death or great bodily harm is a malicious intent).

required . . . although he did not intend the resulting harm
but acted under such circumstances that there was a plain
and strong likelihood that it might happen. [Perkins &
Boyce, Criminal Law (3d ed), ch 7, § 4, p 858.][29]

Another way to conceptualize this mental state is
to recognize that because malice is implied when the
circumstances attending the killing demonstrate an
abandoned and malignant heart, "[t]his simply means
that malice may be implied when the defendant does
an act with a high probability that it will result in
death and does it with a base antisocial motive and
with wanton disregard for human life." *People v
Fuller*, 86 Cal App 3d 618, 628; 150 Cal Rptr 515
(1978) (citations omitted).[30] The formulation is an
appropriate reflection of our understanding that mal-
ice requires egregious circumstances, and we
expressly approve it.[31]

---

[29] See also *Aaron, supra* at 729 (a jury can properly *infer* malice from
evidence that a defendant intentionally set in motion a force whose natu-
ral tendency is to cause death or great bodily harm).

Likewise, wilful and wanton misconduct as applied to certain civil cases
"describes conduct that is *either* wilful—i.e., intentional, *or* its effective
equivalent. '[W]illful and wanton misconduct is made out only if the con-
duct alleged shows an intent to harm *or, if not that, such indifference to
whether harm will result as to be the equivalent of a willingness that it
does.' " Jennings v Southwood*, 446 Mich 125, 140; 521 NW2d 230 (1994).

[30] Second-degree murder in California is defined as the "unlawful killing
with malice aforethought but not willful, premeditated or deliberate."
*Fuller, supra* at 628.

[31] Obviously, our approval of the *Fuller* standard supplements, but does
not supplant, the traditional requirement that the defendant act in wanton
and wilful disregard of the likelihood that the natural tendency of the con-
duct is to cause death or great bodily harm. However, we reject the line of
California cases that define second-degree murder in terms of subjective
intent. These post-*Fuller* decisions illustrate the difficulties that may arise
when a court addresses the issues whether an objective or subjective
intent is required for murder and whether voluntary intoxication can
negate the requisite intent. See *People v Watson*, 30 Cal 3d 290; 637 P2d
279 (1981) (a finding of implied malice depends on a determination that
the defendant actually appreciated the risk involved, i.e., a subjective

Finally, we do not agree that if the third form of malice were defined in terms of an objective standard it would necessarily mean that all drunk driving cases that result in death could be submitted for trial on second-degree murder charges. In enacting the OUIL, causing death, statute, the Legislature has made it clear that any person who operates a motor vehicle while under the influence of intoxicating liquor and causes the death of another person is guilty of a felony punishable by imprisonment for not more than fifteen years. MCL 257.625; MSA 9.2325. That the OUIL, causing death, statute does not limit the ability of the prosecution to charge an intoxicated driver with common-law offenses such as murder does not eliminate the people's burden of proving beyond a reasonable doubt that the defendant engaged in "wanton" misconduct. More important, for purposes of avoiding the temptation to overcharge, it does not dilute the prosecutor's responsibility to be mindful that "[t]he preliminary examination should identify not simply those who are probably guilty but more precisely those who are probably convictable." MCR 6.107

---

standard); *People v Whitfield*, 7 Cal 4th 437; 868 P2d 272 (1994) (evidence of voluntary intoxication is admissible to determine whether the defendant harbored either express or implied malice for purposes of a second-degree murder conviction. If voluntary intoxication prevented a defendant from forming malice, the defendant cannot be found guilty of murder); *People v Reyes*, 52 Cal App 4th 975; 61 Cal Rptr 2d 39 (1997) (recognizing that the holding of *People v Whitfield* was superseded by a 1995 statutory amendment that provided that evidence of voluntary intoxication is no longer admissible on the issue of implied malice aforethought). In none of the cases before us does evidence exist to negate the depraved heart of the defendants, other than evidence of drunkenness. Because evidence of drunkenness is not a defense to second-degree murder, we hold that, under either standard, sufficient circumstantial evidence exists in *Baker*, and sufficient circumstantial and direct evidence exists in *Goecke* and *Hoskinson*, to support the bindovers and convictions of these defendants.

(now MCR 6.110), Commentary to the Proposed Rules of Criminal Procedure, 422A Mich 31 (1985). The dissent contends that by finding sufficient evidence to support a bindover and the convictions today we adopt the position that drunk driving alone is sufficient to establish probable cause of malice. *Post* at 479. We disagree. The cases before us today involve a level of misconduct that goes beyond that of drunk driving. The fact that sufficient proofs were presented in *Goecke* to support a bindover on the charge of second-degree murder and that sufficient evidence was presented in *Baker* and *Hoskinson* to support the juries' findings of guilt does not mean that all drunk driving cases that result in death should proceed to trial on charges of second-degree murder.

3

In *Goecke*, we hold that there was sufficient evidence to bind the defendant over on charges of second-degree murder under either a subjective or objective standard. For purposes of preliminary examination, the proofs adduced must only establish probable cause to believe that a crime was committed and probable cause to believe that the defendant committed it. If the district court determines that "probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it," the defendant must be bound over for trial. MCR 6.110(E). Some evidence must be presented regarding each element of the crime or from which those elements may be inferred. *People v Doss*, 406 Mich 90, 100-101; 276 NW2d 9 (1979). It is not, however, the function of the examining magistrate to discharge the accused when the evi-

dence conflicts or raises a reasonable doubt of the defendant's guilt; that is the province of the jury. *Id.* at 103.

In *Goecke*, the prosecution was required to prove that probable cause existed to believe that the defendant acted with wanton and wilful disregard of the likelihood that the natural tendency of the defendant's conduct was to cause death or great bodily harm.

Evidence adduced at the preliminary examination established that a death occurred, that the death was caused by an act of the defendant, and that the defendant probably possessed the requisite mental state with respect to the actus reus of the crime. The defendant evaded the police while drinking alcohol in a liquor store parking lot, permitting the inference that the defendant was aware that his level of intoxication was too great to have been driving at 8:30 P.M.; that, despite such awareness, defendant drove recklessly at high speeds along a main artery in the city of Pontiac after having consumed a significant amount of alcohol; and that the defendant was aware of the extent of his impairment and lack of control after having narrowly missed hitting another vehicle, yet still continued to speed through at least one red traffic light before colliding with the victim's car. Taken together, the evidence supported findings that the defendant was drunk and speeding in the middle of a city, that his lack of self-control caused him to narrowly miss striking a vehicle, and that he thereafter ran through a stoplight, struck another vehicle, and killed its occupant. Shortly after the accident, defendant was heard saying that he knew he should not have been driving, that the accident was all his fault,

that he was driving too fast, and that he was too
drunk to drive. There was sufficient credible evidence
of probable malice to support a bindover on a charge
of second-degree murder. The failure to do so was an
abuse of discretion.

### B. *PEOPLE v BAKER* AND *PEOPLE v HOSKINSON*

We also disagree with the Court of Appeals conclu-
sions that there was insufficient evidence presented
at trial to sustain the convictions of Baker and Hos-
kinson on charges of second-degree murder. The
prosecution was required to submit evidence suffi-
cient to permit a reasonable jury to find beyond a rea-
sonable doubt that the defendants acted with malice.
*People v Hampton*, 407 Mich 354, 366-368; 285 NW2d
284 (1979); *Jackson v Virginia*, 443 US 307, 315-316;
99 S Ct 2781; 61 L Ed 2d 560 (1979). In each case, the
prosecution met its burden.

For the reasons stated by the dissenting judge in
the Court of Appeals in *Baker*,[32] we hold that the evi-
dence was sufficient to permit a reasonable jury to
infer malice under either a subjective or objective
standard. Testimony established that the defendant
lived within one mile of the scene of the accident,
had a blood-alcohol content of 0.18 percent, drove
well in excess of the speed limit, ran a red stoplight,
drove through an intersection at a time when he
could have seen at least three vehicles properly trav-
eling through the intersection, narrowly missed hit-
ting two cars before hitting the victims' car, and
killed two people. A jury could reasonably infer that

---

[32] See n 7.

the defendant placed himself in a position the results of which a reasonable person would know had the natural tendency to cause death or great bodily harm. Viewing the evidence in a light most favorable to the prosecution, we hold that there was sufficient evidence to support the jury's verdict.

We also find there was sufficient evidence to support the conviction of defendant Hoskinson. Defendant was highly intoxicated when he left the bar in the early evening hours. While still in the bar's parking lot, defendant twice backed into the same parked vehicle. It could be inferred that these collisions put the defendant on notice that he should not be driving. Despite such awareness, defendant drove at a high rate of speed through a residential subdivision. Having driven through this area before, defendant was aware of the speed dips in the road. He swerved to avoid hitting a car stopped at a stop sign, ran through the stop sign, and nearly hit a car driving in the opposite direction. The occupants of defendant's car advised him that he was driving too fast and that he should slow down.

After colliding with a vehicle parked at the side of the road, defendant traveled across the eastbound lane, over a curb, across some grass, and struck the victim. Defendant continued to drive along the grass and sidewalk until he finally reentered the street several hundred yards from the point of impact. Despite the fact that defendant's passengers jumped from the moving vehicle after informing the defendant that he had hit a child, the defendant proceeded to drive another several blocks before coming to a stop. We believe that a reasonable jury could find malice from these facts. Accordingly, we reverse the decision of

the Court of Appeals and remand to the trial court for reinstatement of defendant's second-degree murder conviction and sentence.

III

The prosecution's motion to amend the information to reinstate defendant's second-degree murder charge was proper, as was the amendment. The prosecution was not required to file an application for leave to appeal from the magistrate's bindover decision. A motion to amend the information pursuant to MCR 6.112(G) is a proper vehicle to secure review where some but not all of the charges originally brought are dismissed by the examining magistrate.

There were sufficient proofs presented at the preliminary examination in *Goecke* to support a bindover on the charge of second-degree murder and sufficient evidence presented at trial in *Baker* and *Hoskinson* to sustain the defendants' convictions of second-degree murder. Accordingly, we reverse the decision of the Court of Appeals in *Goecke* and remand for further proceedings on the charge of second-degree murder. In *Baker* and *Hoskinson*, we reverse the decisions of the Court of Appeals and remand to the respective trial courts for reinstatement of the verdicts and sentences.

MALLETT, C.J., and WEAVER and TAYLOR, JJ., concurred with BOYLE, J.

KELLY, J. (*concurring in part and dissenting in part*). In the matter of *People v Goecke*, I concur with the majority with respect to the procedural issue only. Regarding the substantive issue, I disagree with the majority's rationale and conclusion. I believe that the

evidence was insufficient to bind defendant Goecke over on the charge of second-degree murder and to convict defendant Baker. I concur only in the result reached by the majority on the substantive issue in *Hoskinson*. I dissent from the rationale and result it reaches on the substantive issues in *Goecke* and *Baker*.

### I. *PEOPLE v GOECKE*: ANALYSIS

#### A

The issue in *Goecke* is whether the district court abused its discretion by not binding over defendant on the second-degree murder charge. The elements of second-degree murder are: (1) a death, (2) caused by the defendant, (3) with malice, and (4) without justification or excuse. *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996).

In *People v Woods*, this Court recognized that the word "malice" is arcane, confusing, and potentially misleading. 416 Mich 581, 625-626; 331 NW2d 707 (1982). We attempted to clarify the concept by requiring trial courts, when instructing on second-degree murder, to explain it in terms of a state of mind. *Id.* at 626-627. Malice is present if a defendant has one of three states of mind. The first two are not at issue in this case. They are: (1) the intent to kill, and (2) the intent to inflict great bodily harm. *Id.* at 627.

When describing the third type, this Court has used varying terminology. On one hand, we labeled it as the "wanton and willful disregard of the likelihood that the natural tendency of a [defendant's] behavior is to cause death or great bodily harm." *People v*

*Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980).[1] Alternatively, we have stated that it is "the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result." *People v Dykhouse,* 418 Mich 488, 495; 345 NW2d 150 (1984).[2]

The prosecution urges this Court to reaffirm the definition in *Aaron* and reject the definition in *Dykhouse.* It argues that, under the definition in *Aaron,* it is not necessary to determine whether the defendant subjectively knew that his actions were wilful and wanton. He need not have known that the natural tendency of the behavior was to cause death or great bodily harm. Rather, one could consider whether a reasonable person would believe that the defendant's conduct created an unreasonable and very high degree of risk of death or great bodily harm.

The law has been unclear concerning whether a defendant must have been subjectively aware of the degree of risk his conduct created to be charged and convicted of second-degree murder. This Court has defined the third form of malice in both objective and subjective terms. *Aaron* and *Dykhouse, supra.* Today's opinion ought to offer the bench and bar guidance on when it is sufficient to charge a defendant with OUIL, causing death, and when a second-degree murder charge is appropriate. To accomplish this, we would have to determine whether the subjective or

---

[1] See also *Woods, supra* at 627.

[2] See also *People v Bailey,* 451 Mich 657, 668; 331 NW2d 707 (1982). Each definition attempts to describe the common-law term "depraved-heart murder." See LaFave & Scott, Criminal Law (2d ed), § 7.4, p 617.

objective definition of the third form of malice applies.

Although the majority states that it does not reach the issue, I contend that it does and that, by default, it adopts the objective definition as stated in *Aaron*. See *ante* at 465, n 26. The majority states that the prosecution in *Goecke* was required to prove that probable cause existed to bind over defendant under the objective standard of *Aaron*. See *ante* at 470. It specifically rejects the line of California cases that defines second-degree murder in terms of subjective intent. See *id.* at 467, n 31. The standard for malice recited throughout the majority opinion suggests the adoption of an objective standard.

I would reject the argument that an objective standard is proper. Under the definition recited in *Aaron* or *Dykhouse*, a defendant must be subjectively aware of the very high risk that his conduct creates in order to be convicted of murder.

Michigan courts long have held that murder permits an inference of a subjective awareness that one's act is dangerous and will probably or naturally result in death or great bodily harm. As early as 1874, this Court held that, to be convicted of murder, an accused must have an intent the "equivalent in legal character to a criminal purpose aimed against life." *Wellar v People*, 30 Mich 16, 19 (1874).

In *Aaron, supra*, we abolished the common-law felony-murder rule. One reason was that it punished all homicides committed during another felony, whether intentional or unintentional, without proving a relation between the homicide and the defendant's state of mind. *Id.* at 708. We stressed that the most basic principle of criminal law is that criminal liability for

causing a harm is not justified absent some culpable mental state regarding that harm. *Id.* See also *Dykhouse, supra* at 511 (CAVANAGH, J., dissenting).

Legal scholars have emphasized that a defendant must be subjectively aware of the high probability of the risk before a conviction for second-degree murder can stand. As one stated:

> It is a question of how much fault should be required for murder; for one who consciously creates risk is morally a worse person than one who unconsciously does so, though each of the two persons may constitute an equal danger to his fellow man. On balance, it would seem that, to convict of murder, with its drastic penal consequences, subjective realization should be required. [LaFave & Scott, Criminal Law (2d ed), § 7.4(b), p 621.]

Other legal scholars commented:

> In other words, the intent to do an act in wanton and wilful disregard of the obvious likelihood of causing death or great bodily injury is a malicious intent. [Perkins & Boyce, Criminal Law (3d ed), ch 2, § 1, p 60.][3]

I agree with these assessments. I would hold that, in order for the prosecution to secure a bindover on a second-degree murder charge, the prosecutor must submit evidence from which it can be inferred that (1) the defendant was subjectively aware that his

---

[3] Perkins gives the example of a man who wants to destroy property by exploding a bomb in a store. He realizes that there is great danger that someone will be killed. He hopes it will not happen. After taking precautions, he sets off the explosion. A person is killed. Perkins concludes that this is homicide with malice, and therefore murder. Carrying a bomb into a store, knowing it to be dangerous, where death results, is murder. From this example, one can conclude that the actor must subjectively know that his actions are dangerous and that the natural tendency of the danger is death or great bodily harm.

action was dangerous and (2) the probable result or natural tendency of the act was to cause death or great bodily harm.

B

I disagree with the majority that defendant Goecke should have been bound over on a second-degree murder charge. The majority essentially adopts the prosecutor's assertion that the fact Goecke was driving while intoxicated should have been sufficient, standing alone, to establish probable cause of malice. The prosecution relies on *People v Lardie*,[4] for the proposition that causing an accident resulting in death while driving when drunk is grossly negligent as a matter of law. It argues that, because the difference between the necessary culpable mental states is one of degree, the case should always be decided by the trier of fact.

It is true that the difference between the risk involved for involuntary manslaughter, where gross negligence is the standard, and second-degree murder is one of degree. An unreasonable risk that is also a high degree of risk may be termed gross negligence. LaFave & Scott, *supra*, § 7.4(a), p 618. For murder, the risk of death or bodily injury is a "very high degree of risk." *Id.*; *Dykhouse, supra* at 495-496. However, the applicable mental state is a distinguishing feature that is not just a matter of degree. Gross negligence requires an "omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *Lardie, supra*

---

[4] 452 Mich 231; 551 NW2d 656 (1996).

at 252, citing *People v Orr*, 243 Mich 300, 307; 220 NW
777 (1928). Therefore, for gross negligence, the stan-
dard is an objective one. On the other hand, as noted
above, the state of mind of the defendant is a key ele-
ment of malice. Consequently, I would reject the
prosecution's argument that defendant can be bound
over on a second-degree murder charge without proof
of his state of mind.

By effectively adopting an objective standard today,
the majority eliminates any real difference between
the proof required for OUIL causing death and that
required for second-degree murder. When the Legisla-
ture enacted the OUIL causing death statute, it pre-
sumed that driving while intoxicated is gross negli-
gence as a matter of law. *Lardie, supra* at 251. Thus,
the prosecution need not provide further proof of
gross negligence when bringing an action under the
act. *Id.* It must prove, simply, that the defendant vol-
untarily decided to drive and did so after knowingly
consuming alcohol. *Id.* As we stated in *Lardie*:
"[C]onsistent with the Legislature's decision to pre-
sume gross negligence as a matter of law and its
desire to deter intoxicated driving, the Legislature
must reasonably have intended that the people prove
a mens rea by demonstrating that the defendant pur-
posefully drove while intoxicated or, in other words,
that he had the general intent to perform the wrong-
ful act." *Id.* at 256.

It can be inferred from the majority opinion that
this general intent element is the same element
required for second-degree murder. In essence, the
majority finds that the intent to drive while intoxi-
cated is all that the prosecution need show to estab-
lish the malice required for second-degree murder. On

the basis of this holding, I discern no difference between the mens rea requirement this Court stated in *Lardie* for OUIL causing death and the majority's requirement for second-degree murder.

Moreover, the holding of the majority renders the causation requirement for OUIL causing death articulated in *Lardie* indistinguishable from the majority's objective test. *Lardie* held that, to prove the causation required for OUIL causing death, the "people must establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death of the victim." *Id.* at 258. "It is the *change* that such intoxication produces, and whether it caused the death, which is the focus of this element of the crime." *Id.*, n 47. The majority's position articulated here is entirely inconsistent with this Court's position in *Lardie* and renders the OUIL causing death statute a mere redundancy.

C

Finally, the prosecution argues that, even if driving while intoxicated is not sufficient to establish probable cause of malice, there were sufficient "aggravating circumstances" in this case to support a bindover.

As indicated above, I would require that the prosecution submit evidence from which it can be inferred that defendant knowingly acted in a wanton and wilful manner. The prosecution should have to show that the defendant knew that the natural tendency of his actions would cause death or great bodily harm.

This requirement comports with Justice BOYLE's concurrence in *Dykhouse, supra*, where she stated

that if: "the defendant *knowingly* created a very high
risk of death with *knowledge* of its consequences, but
that the defendant did not intend to cause the victim's
death, then [the jury] could not find the defendant
guilty of first-degree premeditated murder." *Id.* at 517,
n 3 (emphasis added). That is, the defendant could
not be found guilty of the specific intent crime of
first-degree murder unless the defendant intended to
cause death. As Justice BOYLE stated: "The mental ele-
ment for first- and second-degree murder is the same:
the act which causes death must be accompanied by
a life-endangering state of mind. It is the additional
element of premeditation and deliberation that
requires a specific intent to kill for first-degree mur-
der . . . ." *Id.* at 517. To be convicted of second-
degree murder, the defendant need not intend death,
but he must knowingly create a high risk of death
*and* have knowledge of its consequences.

Until today, this Court had not determined under
what circumstances intoxicated drivers can be bound
over and convicted on second-degree murder charges.
However, other jurisdictions have handled the issue
and have established some parameters that are help-
ful to consider.

In *Essex v Commonwealth of Virginia*,[5] the defend-
ant was driving a truck southbound on a two-lane
highway. The truck passed cars by crossing a solid
centerline. This continued for six miles. He passed
through an intersection on a red light, nearly colliding
with a tractor-trailer. A mile and a half farther, his
truck collided with a northbound pickup truck, killing

---

[5] 228 Va 273, 278-279; 322 SE2d 216 (1984).

three of its passengers. The defendant's blood-alcohol content was 0.144 percent.

The court held that there was insufficient evidence to sustain a second-degree murder conviction. It held that the jury could only speculate whether the defendant had a malicious purpose in driving as he did.

In *State v Jensen*,[6] the defendant was intoxicated and drove, weaving in and out of traffic. His car struck another vehicle, killing the occupant. The court held that the fact that defendant was driving while intoxicated was not sufficient, in and of itself, to support a finding of malice. It stated:

> Without some circumstances showing malevolence other than the doing of a wrongful act toward another, the non-malicious crime of common-law manslaughter is not converted into the malevolent crime of murder at the common law. We do not say there may not be crimes arising even to first degree murder, committed by the instrumentality of an automobile. In that event, the instrumentality of its commission is a matter of no consequence where the evidence shows the ingredients of murder at the common law are present. [*Id.* at 445.][7]

In *Griffin v State*,[8] the defendant left a nightclub where she had been drinking beer and got behind the wheel of her automobile. While driving, she hit a police officer who was talking to a driver whom he had stopped along the roadway. The defendant's vehicle stopped 590 feet from the point of the impact and

---

[6] 197 Kan 427, 429-430; 417 P2d 273 (1966).

[7] The court noted that defendant did not have a grudge, did not threaten anyone, was not speeding and was only slightly intoxicated.

[8] 578 SW2d 654, 655-657 (Tenn Crim App, 1978).

left no skid marks. It was determined that the defendant's blood had a 0.13 percent alcohol content.

The court noted that there was evidence that the defendant had been driving at a high rate of speed. By her own admission, she was incapable of observing her side of the road. Her companion warned her to watch the vehicles on the shoulder. When she brought her car to a stop, she did not attempt to assist the person whom she had been told that she had struck. Looking at these facts, in addition to her intoxication, the court found sufficient evidence to sustain a second-degree murder conviction.

In *People v Watson,*[9] the defendant consumed a large amount of alcohol at a bar. He entered an intersection on a red light and avoided a collision by skidding to a halt in the middle. The defendant then drove away at a high rate of speed and struck a car in another intersection, killing two of its occupants. The speed limit was thirty-five miles an hour. Expert testimony indicated that the car's speed immediately before the brakes were applied was eighty-four miles an hour. At the point of impact, the defendant's speed was approximately seventy miles an hour. One hour after the collision, the defendant's blood-alcohol content was 0.23 percent.

The court noted that malice can be found where a person, knowing that his conduct endangers another's life, nonetheless acts deliberately with conscious disregard for that life. This differs from manslaughter, because malice "contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is

[9] 30 Cal 3d 290, 293-297; 637 P2d 279 (1981).

absent in gross negligence." Moreover, a finding of gross negligence is made by applying an objective test: If a reasonable person in the defendant's position would have been aware of the risk involved, then the defendant is presumed to have had such awareness. "However, a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (Emphasis in the original.)

The court in *People v Watson* stated that malice may be found when a defendant (1) does an act with a high probability that it will result in death and (2) does it with a base antisocial motive and with a wanton disregard for human life. *Id.* at 300. Under that definition, the court found sufficient evidence to bind the defendant over on a second-degree murder charge.

From these cases, one may draw several conclusions. First, the requisite mental state for second-degree murder may not be inferred solely from the fact that a defendant drove while intoxicated. Death or great bodily harm is not the natural tendency or probable result of drunk driving. See also White, *Drunk driving as second-degree murder in Michigan*, 41 Wayne L R 1433, 1447 (1995).[10]

Next, driving while intoxicated, coupled with reckless driving, can support a second-degree murder bindover and conviction. One may infer from certain evidence that an intoxicated driver is subjectively

---

[10] In her law review article, White quotes Hingson, *Prevention of alcohol-impaired driving*, 17 Alcohol Health & Res World 28 (1993). From his studies, Hingson estimates that one drunk driving arrest occurs for every "300 to 1000 drunk-driving trips." From these statistics, White concludes that most incidents of drunk driving do not result in injury.

aware that his actions will probably result in death or great bodily harm. Numerous factors can be taken into account. Some are the time of day, length of the trip, speed traveled, route taken, recklessness of the driving, the defendant's actions following the accident, degree of intoxication, and the defendant's drunk driving history. See White, *supra* at 1461.

I disagree with the majority that, by adopting a subjective approach, voluntary intoxication would be a defense in these cases. Any claim that intoxication can negate the defendant's subjective awareness should be rejected. Second-degree murder is a general intent crime, to which intoxication is not a defense. *People v Langworthy*, 416 Mich 630; 331 NW2d 171 (1982). A subjective awareness element in second-degree murder cases does not create a specific-intent crime. To be subjectively aware of the consequences of one's actions is not the same as specifically intending to cause death.

Today, this Court essentially adopts an objective standard that could result in all drunk driving cases causing death being submitted for trial on second-degree murder charges. The prosecution has the discretion to bring charges it deems appropriate. On the basis of the majority opinion, there is little to prevent the prosecutor from charging every defendant allegedly causing such an accident with both second-degree murder and operating a motor vehicle while under the influence of intoxicating liquor, causing the death of another person, MCL 257.625(4); MSA 9.2325(4).

In the instant case, I would find that the district court did not abuse its discretion in refusing to bind

Jason Goecke over on the second-degree murder charge.

The magistrate's duty is clearly established by statute. MCL 766.13; MSA 28.931.

> If it shall appear to the magistrate at the conclusion of the preliminary examination either that an offense has not been committed or that there is not probable cause for charging the defendant therewith, he shall discharge such defendant. If it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial.

To establish probable cause to bind over a defendant, the prosecutor must submit evidence on each element of the crime charged or evidence from which the elements can be inferred. *People v McBride*, 204 Mich App 678, 681; 516 NW2d 148 (1994). A magistrate should not dismiss a charge merely because some of the evidence is conflicting. *People v King*, 412 Mich 145, 153-154; 312 NW2d 629 (1981).

Even if evidence is submitted on each element of the offense, the magistrate's job is not to automatically bind over. The magistrate is to review the whole matter. Where satisfied that there was insufficient evidence either that the offense charged was committed or that the defendant was the one who committed it, the charges must be dismissed. *Id.* at 154.

In this case, the evidence at the preliminary examination revealed that defendant drove his automobile while intoxicated, drove above the speed limit, ran a red light, and hit another vehicle. There was no evidence that defendant became subjectively aware that

his actions would probably result in death or great bodily harm.

Nor does his statement after the accident, admitting that he was drunk and that he was speeding, provide evidence of his state of mind. Defendant's awareness at the time the accident occurs, not after the fact, is what must be determined. Michigan law requires that there be unity between the act and the defendant's state of mind. *People v Patskan*, 387 Mich 701, 714; 199 NW2d 458 (1972).[11]

Here, defendant admitted that he was going too fast and stated, "I know I'm drunk." There was no unity of state of mind and act that would permit a finding of malice. Under the facts presented, I would not conclude that the district court abused its discretion in refusing to bind over the defendant on a second-degree murder charge, after finding insufficient evidence of malice. I would affirm the decision of the Court of Appeals.

I would find that, even under an objective standard, Goecke's actions do not support a second-degree murder charge. His speeding and running a red light caused the decedent's injury, not the fact that he was intoxicated. Under the majority opinion, anyone who is speeding, runs a red light, and causes an accident resulting in death can now be charged with second-degree murder. I do not agree with the majority that a reasonable person would necessarily know that the natural tendency of these actions would result in death or great bodily harm. Even viewing Goecke's

---

[11] "[I]t is a basic premise of Anglo-American criminal law that the physical conduct and the state of mind must concur." LaFave & Scott, *supra*, § 3.11(a), p 268.

actions objectively, I would not find sufficient evidence to support a second-degree murder charge.

## II. *PEOPLE v BAKER*: ANALYSIS

Unlike Jason Goecke, defendant Richard Baker was tried and convicted of second-degree murder. In determining whether there was sufficient evidence to sustain the conviction, we review the evidence in a light most favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), modified 441 Mich 1201 (1992). We determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

Looking at the evidence in a light most favorable to the prosecution, I would conclude in *People v Baker* that there was insufficient evidence to sustain the conviction. Just as in *Goecke*, the evidence revealed that defendant was intoxicated, was speeding, and ran a red light. However, there was insufficient evidence that defendant subjectively knew that the natural tendency of his actions would likely result in death or great bodily harm to another person. Therefore, I would affirm the Court of Appeals judgment in this case, as well.

For the same reason stated in my analysis in *Goecke*, I would likewise not find sufficient evidence to sustain the second-degree murder conviction of Baker under an objective standard.

## III. CONCLUSION

In order for a defendant to be charged and convicted of second-degree murder when he drives while intoxicated and causes the death of another, I would hold that the prosecutor must establish that (1) the

defendant was subjectively aware of the dangerous nature of the act involved, and (2) the natural tendency of the act was to cause death or great bodily harm.

In *Goecke* and *Baker*, I would find that the prosecution did not meet its burden. Therefore, I would affirm the decisions of the Court of Appeals in those cases.

BRICKLEY and CAVANAGH, JJ., concurred with KELLY, J.