# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

           Plaintiff-Appellee,

v

RODERICK DEVONE HARRIS,

           Defendant-Appellant.

UNPUBLISHED
March 26, 2015

No. 318668
Genesee Circuit Court
LC No. 12-031291-FC

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of two counts of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury acquitted defendant of a felon in possession charge, MCL 750.224f. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 120 months to 360 months' imprisonment for each of the manslaughter convictions and two years' imprisonment for the felony-firearm conviction. He now appeals as of right. Finding no errors warranting reversal, we affirm defendant's convictions and sentences, but remand the matter to the trial court for the ministerial task of correcting defendant's judgment of sentence and Sentencing Information Report (SIR) to reflect that he was convicted of voluntary manslaughter, not involuntary manslaughter.

## I. BASIC FACTS

On June 26, 2012 at approximately 12:30 a.m., Marquis Meeks (Marquis) and Sandra Janay Pittman (Janay) were shot and killed at defendant's home. Defendant admitted that Marquis and Janay were at the home to deliver crack cocaine to defendant. Defendant claimed that once he told them that he did not have money for the purchase, Marquis and Janay ordered him into the basement where they tied him to a chair and ordered him to call his girlfriend, Michelle Watson, down to the basement, whom they also tied to a chair. Michelle successfully pleaded to be released in order to join her children upstairs. While Janay and Michelle were upstairs, defendant was able to break free of his hand restraints. He struggled with Marquis and began to run up the stairs. Janay was standing on a landing at the top of the stairs and was attempting to shoot defendant, but the gun safety was on. Defendant was able to wrestle the gun from Janay. He shot her once in the back as she lost her balance on the stairs. Defendant then ran down to the basement to find Marquis. He shot Marquis four times from behind as Marquis

attempted to get up the stairs. Defendant's theory was that he acted in self defense and in defense of others. The prosecution argued that defendant went too far and that his alleged fear for his own safety and that of Michelle and their children was not reasonable.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that his manslaughter convictions were not supported by sufficient evidence.[1] Defendant claimed that he had an honest and reasonable belief that he and his family were in imminent danger of death or serious bodily harm and that the prosecutor failed to disprove defendant's theory. We disagree.

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). An appellate court "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (internal quotation marks omitted); see also *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992).

"[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. Significantly, provocation is not an element of voluntary manslaughter. Rather, provocation is the circumstance that negates the presence of malice." *People v Mendoza*, 468 Mich 527, 535-36; 664 NW2d 685 (2003) (internal citations and footnote omitted). "In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). "The determination of what is reasonable provocation is a question of fact for the factfinder." *Id.* at 390.

Defendant argues that the "prosecution failed to disprove self defense as a possibility." The Michigan Supreme Court has held that:

> the prosecution bears the burden of disproving the common law defense of self-defense beyond a reasonable doubt. Stated another way, once the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of proof to exclude the possibility that the killing was done in self-defense . . . This allocation of the burden of proof is well settled in this Court and the Court of Appeals. We discern no cogent reason to disrupt the established burden of proof. Accordingly, we reaffirm that once the defendant satisfies the

---

[1] He does not challenge the felony-firearm conviction.

initial burden of production, the prosecution bears the burden of disproving the common law defense of self-defense beyond a reasonable doubt. [*People v Dupree*, 486 Mich 693, 709-10; 788 NW2d 399 (2010).][2]

At trial, defendant testified that he acted in self defense and in defense of his family. Our Supreme Court has explained when killing is justified under such circumstances:

> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat. [*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (footnote omitted).]

"Case law in Michigan also allows a person to use deadly force in defense of another." *People v Kurr*, 253 Mich App 317, 321; 654 NW2d 651 (2002).

Defendant argues that, under the so-called "castle doctrine," he had no duty to retreat because the attack took place in his home. It is true that there is no duty to retreat when one is attacked in his own home because, ostensibly, there is no safer place to retreat. *Riddle*, 467 Mich at 119. However, while there is no duty to retreat, the defendant must still have had an honest and reasonable belief that he or his family was in imminent danger of death or great bodily harm. The facts of the case support the jury's verdict for voluntary manslaughter. That is, that "defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich at 535-36. Even if defendant was attacked in his own home, the jury was within its right to conclude that defendant's belief that he and his family were in danger was not honest or reasonable. Defendant had disarmed Janay before he shot her and he shot Marquis as he was fleeing up the stairs. The credibility of defendant's testimony as to his state of mind was a question for the jury to decide. Under the circumstances of this case it was not unreasonable for the jury to conclude that the threat to defendant and his family had passed and that he shot Janay and Marquis, not out of self protection, but because he was still acting under the heat of passion.

III. JURY INSTRUCTIONS

---

[2] Because defendant was committing a crime at the time of the shooting (a drug deal), the statutory Self Defense Act, MCL 780.871 *et seq.* was inapplicable. The Act, which includes defense of third parties, applies only where an individual was not committing a crime at the time. MCL 780.972.

Defendant next argues that the trial court erred in giving the voluntary manslaughter instruction because such an instruction was not supported by a rational view of the evidence. We disagree.

"We generally review claims of instructional error de novo. However, we review for an abuse of discretion a trial court's determination that a specific instruction is inapplicable given the facts of the case." *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011).

Pursuant to MCL 768.32(1), upon indictment for an offense that consists of different degrees a jury may find a defendant guilty of a degree of that offense inferior to that charged in the indictment. *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

Here, defendant was charged with second-degree murder and open murder. Our Supreme Court has held that "[m]anslaughter is an inferior offense of murder because manslaughter is a necessarily included lesser offense of murder." *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). Second-degree murder, as defined in MCL 750.317 and *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998), requires a prosecutor to show: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *Mendoza*, 468 Mich at 534. In contrast, "[m]anslaughter is murder without malice." *Id.* As previously stated, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. Significantly, provocation is not an element of voluntary manslaughter. Rather, provocation is the circumstance that negates the presence of malice." *Id.* at 535-536 (internal citations and footnote omitted). Thus, "the element distinguishing murder from manslaughter – malice – is negated by the presence of provocation and heat of passion" and "the elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice." *Id.* at 540. "Malice is present even where there is no actual intent to kill if the actual intent is to inflict great bodily harm or to engage in behavior the natural tendency of which is to cause death or great bodily harm." *People v Davis*, 76 Mich App 187, 189; 256 NW2d 576 (1977). Thus, "malice" can be "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 464.

Defendant objected to the trial court giving a jury instruction on manslaughter because he did not believe the facts supported such an instruction. After a lengthy discussion, the trial court indicated that it was better to leave the issue for the jury. The trial court ultimately gave a self defense/defense of others instruction, along with a voluntary manslaughter instruction.

The same analysis for Issue I, *supra*, supports the trial court's giving the voluntary manslaughter instruction. Defendant argues that "no evidence of malice was presented to the jury and, in the absence of malice, there was nothing for the element of provocation to negate. It follows that, if provocation is inapplicable (because there is nothing to apply it to) there cannot

be a voluntary manslaughter – an element of the offense is missing." But, as previously stated, "malice" does not simply mean an intent to kill. It also includes the intent to cause great bodily harm or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Goecke*, 457 Mich at 464. Defendant, though he testified he had no intention of killing or harming Marquis and Janay, *shot them both from behind*. The natural tendency of such behavior was that death or great bodily harm would result. There was no question that malice existed. The issue presented to the jury was whether malice was negated by provocation and heat of passion or whether defendant was justified in shooting Janay and Marquis in self-defense or defense of others. Because voluntary manslaughter is a necessarily included offense to murder and a rational view of the evidence supported such an instruction, the trial court did not abuse its discretion when it instructed the jury on voluntary manslaughter over defendant's objection.

## IV. HABITUAL OFFENDER NOTICE

Next, defendant argues that the prosecutor failed to comply with the notice requirements of MCL 769.13 because it did not file a notice of enhancement within 21 days of defendant's arraignment or waiver of arraignment. As a fourth habitual offender, the guidelines range was 62 to 228 months; absent the enhancement, defendant's minimum range would have been 62 to 114 months. Defendant claims that he is entitled to resentencing with no enhancement. We disagree.

Defendant's manslaughter sentences were enhanced because he is an habitual offender, fourth offense, MCL 769.12. However, defendant argues that the prosecution's notice that it would seek enhancement of his sentences was not timely filed, per MCL 769.13, which provides, in relevant part, as follows:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense ***or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.***

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). . . . The prosecuting attorney shall file a written proof of service with the clerk of the court. [Emphasis added.]

This Court has held that the 21-day filing period is a bright-line rule which this Court will strictly apply. *People v Morales,* 240 Mich App 571, 575-576, 585-586; 618 NW2d 10 (2000).

At the time of defendant's case, MCR 6.113 provided: "A circuit court may submit to the State Court Administrator . . . a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the

defendant a copy of the information."[3] The Genesee Circuit Court issued such an administrative order effective September 29, 2011, eliminating circuit court arraignments for defendants represented by counsel, where "arrangements have been made to give the defendant a copy of the information." Both the felony information and the notice of enhancement were filed on January 25, 2013. Because defendant's arraignment was waived and defendant received a notice of enhancement at the same time he received the felony information, the notice was timely and defendant is not entitled to resentencing.

## V. CLERICAL ERROR

Defendant requests that the matter be remanded to correct a clerical error in the judgment of sentence and SIR. Defendant was not convicted of involuntary manslaughter; he was convicted of voluntary manslaughter. The prosecutor agrees that the record should be corrected, especially in light of the fact that guidelines are scored the same under either offense.

## VI. PROSECUTORIAL ERROR

Finally, in his Standard 4 Brief, defendant argues that the prosecutor misrepresented the facts when he told the jury during closing arguments that defendant used drugs 45 minutes before the shooting and that defendant's idea of honest and reasonable was not the same as the jury's. Defendant further argues that the prosecutor deprived him of his right to due process when the prosecutor changed the theory of the case at the last minute. Defendant claims he had no idea what to defend against and was taken by surprise when the prosecutor went from claiming that defendant staged the scene and "set up" the murders to admitting that the actions in the basement took place as defendant claimed. We disagree.

Our Court has recently held:

> [W]e must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial. Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error. A plain error is one that is clear or obvious, and the error must affect the defendant's substantial rights. That is, the defendant must have been prejudiced by the plain error. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence. [*People v Cooper*, ___ Mich App ___; ___ NW2d ___ (Docket No. 318159, issued January 22, 2015), slip op, p 8 (internal quotation marks and citations omitted).]

---

[3] MCR 6.113(E) was amended in 2014 and now provides: "A circuit court may submit to the State Court Administrator pursuant to MCR 8.112(B) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the defendant a copy of the information *and any notice of intent to seek an enhanced sentence*, as provided in MCR 6.112(F)." (Emphasis added.)

"Issues of prosecutorial misconduct are reviewed on a case-by-case basis by examining the record and evaluating the remarks in context." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "The propriety of a prosecutor's remarks depends on all the facts of the case. Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002) (internal citation omitted). "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008).

The prosecutor properly commented on defendant's recent drug use. Flint Police Detective Jeff Collins testified that defendant told him he used crack cocaine 45 minutes before the shooting. In the interview that was played for the jury, defendant admitted to smoking crack "probably about an hour and a half" before the shootings. Michelle knew that defendant had used crack the night of the shootings because she could see "his eyes just get bigger." In fact, defendant testified that on the night of the shootings he purchased "4-20s, which is like $80" of crack from another dealer. He smoked it "back-to-back" at approximately 9:00 p.m. Michelle and the children returned home around that time and defendant asked to borrow money from his son. He purchased and smoked $15 worth of additional crack. Defendant's recent drug use was relevant because he admitted that crack made him feel paranoid and his actions that night were undoubtedly influenced by his recent drug use.[4]

Additionally, defendant incorrectly accuses the prosecution of changing its theory of the case. At no time did the prosecutor argue to the jury that defendant had staged the scene or lied about being attacked and tied up. At issue was defendant's response to those events. During closing arguments, the prosecutor conceded that defendant and Michelle had been tied up: "the evidence is that these people were tied up, okay, all right. It doesn't matter what Sergeant Collins believes, he's a suspicious cop, you have to follow the evidence; but that still doesn't give him the right to kill these two people." He argued:

> You know, they're going to argue, well, he did it because of the kids; he went down in the lion's den because of the kids; he went down in the lion's den because of the kids and Michelle, he's afraid for the kids. I get that, I have kids, okay; I get that. But his – his explanation is not consistent with his behavior and that's what you're looking at, his conduct. He doesn't go to the kids; he doesn't grab 'em and take them to safety. He goes and gets the keys and takes himself to safety. It's not honest and reasonable, okay.

Defendant was not deprived of a fair trial because the prosecutor's comments were supported by the record.

---

[4] To the extent the prosecutor may have been slightly off in his time, the trial court instructed that the attorneys' comments were not evidence.

Affirmed. The matter is remanded for the ministerial task of correcting defendant's judgment of sentence and SIR to reflect that he was convicted of voluntary manslaughter, not involuntary manslaughter. We do not retain jurisdiction.


/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro