# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RASHAD DAQUAY PEREZ,

        Defendant-Appellant.

UNPUBLISHED
March 8, 2016

No. 324861
Kalamazoo Circuit Court
LC No. 2014-000786-FC

Before: METER, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial,[1] of second-degree murder, MCL 750.317; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1).[2] The trial court sentenced defendant to 360 to 720 months' imprisonment for his second-degree murder conviction and two years' imprisonment for his felony-firearm conviction, to be served consecutively. We affirm defendant's conviction for second-degree murder, vacate defendant's felony-firearm conviction, and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case concerns the fatal shooting of 13-year-old Michael Day (Michael) on May 26, 2014, in the Edison neighborhood in Kalamazoo, Michigan. Edison is a high-crime area inhabited by two rival street gangs called "Trapp Money" and the "Washington Street Boys" (WSB). Deshawnra Shivey, an acquaintance of Michael's and friend of Nikia and Tajsha Burton, testified at trial that Michael was a member of WSB. Michael's cousin, Fabian Gallegos, testified that defendant was a member of Trapp Money.

---

[1] Defendant's trial was consolidated with that of Victor Garay and Octavius Snell. We have omitted discussion of portions of the trial not relevant to defendant.

[2] Defendant was found not guilty of a second charge of felony-firearm. He was found guilty of conspiracy to commit murder, MCL 750.157a, but the trial court vacated that conviction.

En'Dia Day, Michael's older sister, testified that she and Michael were riding bicycles together on May 26, 2014. As they approached Race Street, she saw defendant shooting a handgun approximately 15 feet away from her. She saw Michael fall to the ground. Gallegos also testified that he saw defendant firing a handgun toward Race Street and he saw Michael fall to the ground. When police responded to the shooting, people were gathered in the area and some yelled that defendant was suspected of having shot Michael. Police used a canine to track defendant from the location of the shooting. Defendant fled when police found him, but was caught and arrested. Police determined that Michael died from a shotgun wound to his chest. Police later found a shotgun in an abandoned house on a street near the shooting. They determined that the bullet that killed Michael was consistent with a bullet that could be fired from that shotgun.

Joshua Parker testified that he lived on Race Street in Edison and, on the day of the shooting, he saw Victor Garay run through an alley with a shotgun. Garay laid the shotgun in the grass in the alley. Parker testified that approximately 15 or 20 minutes later, he heard gunshots, and saw Garay carrying a shotgun and running through the alley from Race Street. Parker opined that two of the shots he heard were from a shotgun and approximately four shots were from a handgun.

Nikia Burton testified at the preliminary examination that on the day of the shooting she saw defendant and Garay together and that defendant had a firearm on his waist. Nikia's sister Tajsha Burton testified at the preliminary examination that she also saw defendant and Garay together that day, and that she heard defendant talk to Garay about "airing out"—i.e., shooting—members of WSB. Tajsha heard Garay tell defendant that there was a firearm in the nearby alley. Garay then walked into the alley. Both Burtons testified to hearing gunshots after Garay walked into the alley. Tajsha testified that, after the gunshots, Garay came onto the porch of her house. Nikia testified that Garay attempted to give her a black glove and a blue glove, but she refused to take them. A recording of the Burton sisters' preliminary examination testimony was played for the jury at trial.

Shivey testified that she took the gloves from Garay and that either Nikia or Tajsha took some large yellow bullets from Garay and hid them. Shivey testified that she told police that Garay had told her that he thought he had shot Michael. But Shivey also testified that Garay had told her that he had fired a firearm but that he had not told her that he had shot anyone.

Defendant was convicted of second-degree murder on an aiding and abetting theory. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence for the jury to find him guilty of second-degree murder. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). When assessing the sufficiency of the evidence, this Court "must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *People v Railer*, 288

Mich App 213, 217; 792 NW2d 776 (2010). And we "must resolve all conflicts in favor of the prosecution." *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). It is for the jury, not this Court, to assess the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

"[T]he elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). "The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999).

"A defendant may be vicariously liable for murder on a theory of aiding and abetting." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The requirements for a conviction under a theory of aiding and abetting are that (1) the crime was committed by the defendant or someone else; (2) the defendant assisted in the commission of the crime through actions or encouragement; and (3) "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006), quoting *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004). See also MCL 767.39.

> The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime. Mere presence, even with knowledge that an offense is about to be committed, is not enough to make one an aider or abettor. To be convicted, the defendant must either himself possess the required intent or participate while knowing that the principal possessed the required intent. [*People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991) (citations omitted).]

"An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999), quoting *People v Turner*, 213 Mich App 558, 568-569; 540 NW2d 728 (1995).

There is no question that there was sufficient evidence to support the first element of aiding and abetting because there was sufficient evidence for the jury to find that Garay had murdered Michael. *Robinson*, 475 Mich at 6; *Smith*, 478 Mich at 70. Defendant does not dispute that Garay caused Michael's death by shooting him with a shotgun. Parker saw Garay on May 26, 2014 running through the alley from Race Street to James Street carrying a shotgun.

Parker saw him put the shotgun in the grass in the alley. Tajsha heard Garay and defendant discuss killing members of WSB, of which Michael was a member. Tajsha heard Garay tell defendant that there was a firearm in the alley. Multiple witnesses heard gunshots at the time Michael was killed. After the gunshots, Garay ran to the porch of the house where Nikia and Tajsha were and tried to give them gloves and bullets. There is evidence that he told someone on that porch that he thought he had shot Michael. Bullets taken from Michael's body and from the tire of an automobile near where Michael was shot were .20-gauge bullets that could have been shot from a shotgun such as the one found near the shooting. Evidence shows that Garay acted with malice in killing Michael because when Michael was shot Garay possessed the shotgun from which the bullet that killed Michael was fired. Parker saw Garay with the shotgun and heard two shots from a shotgun at the time Michael was killed. Tajsha heard Garay and defendant discussing shooting members of WSB. Therefore, evidence shows that Garay intended to kill Michael and that Garay certainly acted "in wanton and willful disregard of the likelihood that the natural tendency of [his] behavior [wa]s to cause death or great bodily harm." *Goecke*, 457 Mich at 464; *Robinson*, 475 Mich at 6. There is no evidence that Garay killed Michael with a justification or excuse. *Smith*, 478 Mich at 70. Because there was sufficient evidence for the jury to find that "the charged crime was committed by . . . some other person[,]" the first element of aiding and abetting was met. *Robinson*, 475 Mich at 6.

The second element of aiding and abetting is also supported by the evidence. Tajsha testified that she heard defendant talk with Garay about "airing out" members of WSB. Defendant had a "close association" with Garay immediately preceding the murder. *Carines*, 460 Mich at 758. En'Dia and Gallegos testified that they saw defendant fire a firearm in Michael's direction when Michael was killed. Although defendant argues that Gallegos's testimony lacked credibility because he was a member of WSB, credibility is the province of the jury, not this Court. *Eisen*, 296 Mich App at 331. Parker testified that he heard six gunshots, only two of which were from a shotgun. When police arrived at the scene, people shouted that defendant was the suspect. Defendant argues that the people shouting were biased against him because they were members of WSB, but there is no evidence as to the identity of those who shouted and, again, credibility is for the jury to decide. *Id.*

Although defendant is correct that "[m]ere presence, even with knowledge that an offense is about to be committed, is not enough to make one an aider or abettor[,]" the above evidence of defendant planning the murder with Garay and participating in shooting Michael shows that defendant was not only present at the location of Michael's murder at the time Michael was murdered, but that defendant encouraged and incited the commission of the murder. *Rockwell*, 188 Mich App at 411-412. And even though the evidence does not suggest that he was the person who successfully shot Michael, defendant's conversation with Garay before the crime regarding shooting members of WSB, and defendant's shooting a handgun at the time of the murder, was sufficient evidence of his assistance in and encouragement of Michael's murder. See *People v McCray*, 210 Mich App 9, 13; 533 NW2d 359 (1995). Thus, the evidence was sufficient to find that the second element of aiding and abetting was met. *Robinson*, 475 Mich at 6.

Evidence also shows that the third element of aiding and abetting was satisfied. *Id.* Defendant's discussion with Garay regarding his intent to shoot members of WSB shows that defendant intended to murder a member of WSB, such as Michael, and it shows that he was

aware that Garay intended to do likewise. *Carines*, 460 Mich at 748. Defendant participated in the execution of the crime by firing a handgun at Michael. *Id*. Additionally, defendant fled the location of the shooting and fled police, supporting the inference that he had intended to murder Michael or that he knew that Garay had intended to murder Michael. *Id*. Contrary to defendant's argument, there is no evidence in the record that defendant had any outstanding warrants at the time Michael was shot or that he fled police for any reason other than that he was guilty of Michael's murder. In sum, when examined "in a light most favorable to the prosecutor[,]" *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012), evidence supported a finding that defendant was guilty of aiding and abetting Michael's murder. *Robinson*, 475 Mich at 6; *Smith*, 478 Mich at 70; *Goecke*, 457 Mich at 464.

### III. ADMISSION OF PRELIMINARY EXAMINATION TESTIMONY

Defendant next argues that the trial court abused its discretion in admitting into evidence the preliminary examination testimony of Nikia and Tajsha, and that admission of the preliminary examination testimony violated his rights under the Confrontation Clauses of the Michigan and United States Constitutions. We disagree.

We review defendant's preserved arguments regarding the trial court's evidentiary rulings for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). We review constitutional issues de novo. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Unless an exception applies, hearsay is not admissible into evidence. MRE 802. One exception to the inadmissibility of hearsay is former testimony of a declarant who is unavailable as a witness. MRE 804(b)(1). A witness is unavailable where the declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so . . . ." MRE 801(a)(2). Under MRE 804(b)(1), where a witness is unavailable, testimony given by that witness "at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," is admissible. The first requirement for admissibility under MRE 804(b)(1) "is that the testimony must have been made at 'another hearing.'" *People v Farquharson*, 274 Mich App 268, 272; 731 NW2d 797 (2007). The second requirement is that "the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony." *Id*. at 275. Among the factors to determine whether the party "had a similar motive to examine a witness at the prior proceeding" are

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and

-5-

available but forgone opportunities). [*Id.* at 278, quoting *United States v DiNapoli*, 8 F 3d 909, 914 (CA 2, 1993).]

Even when evidence is admissible under MRE 804, "it is still necessary to determine whether use of the testimony would violate a defendant's constitutional right to confront prosecution witnesses." *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998). Testimony given at a preliminary examination is testimonial in nature and implicates the Confrontation Clause. *Crawford v Washington*, 541 US 36, 60; 124 S Ct 1354; 158 L Ed 177 (2004). "Former testimony is admissible at trial under MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). See also *Crawford*, 541 US at 68.

The prosecution informed the trial court on the beginning of the third day of trial that Nikia and Tajsha were unavailable to testify. Both witnesses were subpoenaed and contacted numerous times, but refused to testify. Their father told the prosecution that the girls had been threatened and that he would not allow them to testify. The prosecution told the trial court that a detective from the Kalamazoo Public Safety Department examined a Facebook account of either Nikia or Tajsha on which was depicted a picture of the witness testifying at preliminary examination with a comment stating that "that bitch should die." The prosecution asked the trial court to declare them unavailable under MRE 804(a)(2). The trial court noted the danger in Edison, "which has caused residents to fear for their personal safety on a regular basis." In the context of this danger, the trial court declared Nikia and Tajsha to be unavailable and permitted their preliminary examination testimony to be entered into evidence.

The trial court did not abuse its discretion in admitting the preliminary examination testimony under MRE 804. Although Nikia and Tajsha's "eleventh-hour decision" not to testify "is not expressly addressed under MRE 804(a)," it is "of the same character as other situations outlined in that rule of evidence." See *People v Adams*, 233 Mich App 652, 658; 592 NW2d 794 (1999). In refusing to testify at trial and in refusing to contact the trial court to discuss the matter—i.e., their "evasion from detection"—Nikia and Tajsha were certainly unavailable according "to the ordinary meaning of the word." *Id.* at 657-659 (emphasis omitted). Furthermore, testimony at trial regarding the dangerous character of Edison, the Internet threat, and Nikia and Tajsha's father refusing to allow them to testify out of fear for their safety, shows that their reason for refusing to testify was "motivated by self-preservation rather than a change of heart." *Id.* "In light of the totality of the circumstances," we hold that the trial court did not abuse its discretion in concluding that they were unavailable under MRE 804(a)(2). *Id.* at 659; *Benton*, 294 Mich App at 195.[3]

---

[3] Although defendant argues on appeal that Nikia and Tajsha were not unavailable under MRE 804(a)(5) because the prosecution had failed to use due diligence, the trial court clearly found them unavailable under MRE 804(a)(2). See *Adams*, 233 Mich App at 660 n 5. Regardless, we conclude that the prosecution's efforts to procure Nikia and Tajsha to testify at trial were reasonable under MRE 804(a)(5) because it subpoenaed them and contacted them

After determining that Nikia and Tajsha were unavailable, the trial court admitted their preliminary examination testimony into evidence. As discussed above, the first requirement for admissibility under MRE 804(b)(1) "is that the testimony must have been made at 'another hearing.'" *Farquharson*, 274 Mich App at 272. There is no dispute that the testimony at issue was made at the preliminary examination and there is no dispute that a preliminary examination is a hearing for purposes of MRE 804(b)(1). See *Adams*, 233 Mich App at 659; *Meredith*, 459 Mich at 67. Therefore, the first requirement of admissibility under MRE 804(b)(1) is satisfied. *Farquharson*, 274 Mich App at 272.

The second requirement is that "the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony." *Id*. at 275. The purpose of a preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986), quoting *People v Duncan*, 388 Mich 489, 499; 201 NW2d 629 (1972). The prosecution's purpose in presenting Nikia and Tajsha's testimony at a preliminary examination was the same reason that it presented their testimony at trial—to show that defendant aided and abetted the murder of Michael. Therefore, defendant had an "interest of substantially similar intensity" in proving or disproving Nikia and Tajsha's testimony at the preliminary examination just as he did at trial. *Farquharson*, 274 Mich App at 278. And despite the lower burden of proof at preliminary examination as compared to the burden at trial, defendant had a similar motive to cross-examine Nikia and Tajsha in both proceedings—i.e., defendant was motivated to show that they did not see him with Garay before Michael's murder, with a firearm, and discussing shooting members of WSB. See *id*. Moreover, defense counsel actually cross examined Nikia and Tajsha with regard to their credibility. *Id*. Because the same issues were at stake in both the preliminary examination and the trial, defendant had a substantially similar interest in those issues relative to Nikia and Tajsha's testimony in each of those proceedings, and defendant cross-examined those witnesses during preliminary examination, the second requirement of admissibility under MRE 804(b)(1) was satisfied *Id*. Thus, the trial court did not abuse its discretion in admitting Nikia and Tajsha's preliminary examination testimony under MRE 804(b)(1). *Benton*, 294 Mich App at 195.

Because Nikia and Tajsha were unavailable under MRE 804(a)(2) and because they were subject to cross-examination at the preliminary examination, defendant's rights under the Confrontation Clauses of the Michigan and Unites States Constitutions were not violated. *Garland*, 286 Mich App at 7. See also *Crawford*, 541 US at 68.[4]

---

numerous times, to no avail, and additionally spoke to their father about allowing them to testify. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

[4] Defendant also argues that Nikia and Tajsha's testimony was inadmissible under MRE 804(b)(6), which involves a statement offered against a party that rendered a witness unavailable. We agree that there is no evidence that defendant was involved in threatening Nikia or Tajsha and, therefore, their preliminary examination testimony would not have been

## IV. FELONY-FIREARM CONVICTION

Next, defendant argues that the trial court erred in failing to vacate his felony-firearm conviction when the trial court vacated his conspiracy conviction. The prosecution concedes error in this regard. We agree.

"If the substantive crime underlying a felony-firearm conviction must be vacated, then that accompanying felony-firearm conviction also must be vacated." *People v Harding*, 443 Mich 693, 716 (BRICKLEY, J., with GRIFFIN and MALLETT, JJ.), 735 (CAVANAGH, C.J., with LEVIN, J.); 506 NW2d 482 (1993), abrogated on other grounds in *People v Ream*, 481 Mich 223 (2008).

Defendant was charged with open murder, felony-firearm while committing murder, conspiracy to commit murder, and felony-firearm while committing conspiracy. The jury found him guilty of second-degree murder, not guilty of felony-firearm while committing murder, guilty of conspiracy, and guilty of felony-firearm while committing conspiracy. The trial court properly dismissed defendant's conspiracy conviction because conspiracy to commit second-degree murder is not a crime in Michigan. *People v Hammond*, 187 Mich App 105, 108; 466 Mich App 335 (1991). However, the trial court did not vacate defendant's felony-firearm conviction related to his conspiracy conviction. Because defendant's conspiracy conviction was vacated, "the jury's factual finding that the [conspiracy] was committed may no longer be relied upon as a basis for a felony-firearm conviction. Absent such a finding, the felony-firearm conviction must also be reversed." *People v Burgess*, 419 Mich 305, 312; 353 NW2d 444 (1984). The trial court's failure to vacate defendant's felony-firearm conviction thus constituted plain error. *Id.*; *Harding*, 443 Mich at 716; *Carines*, 460 Mich at 763. Moreover, this error prejudiced defendant and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 763-764. Therefore, we vacate defendant's felony-firearm conviction. Furthermore, because defendant's sentence for this conviction preceded and was consecutive to his sentence for second-degree murder, defendant should receive credit, applied to his sentence for second-degree murder, for his time spent serving his felony-firearm sentence. See *Harding*, 443 Mich at 717 (BRICKLEY, J., with GRIFFIN and MALLETT, JJ.), 735 (CAVANAGH, C.J., with LEVIN, J.).

## V. SENTENCING

Finally, defendant argues that the trial court erred in assessing points for prior record variable (PRV) 7 (subsequent or concurrent felony convictions), and for offense variables (OVs) 13 (continuing pattern of criminal behavior) and 14 (whether the offender was a leader in a multiple-offender situation).[5] We agree. The prosecution has conceded error with regard to

admissible under MRE 804(b)(6). *Id.* However, defendant's argument is irrelevant because the trial court admitted the testimony under MRE 804(b)(1), not MRE 804(b)(6).

[5] We acknowledge that defendant submitted to this Court a statement of supplemental authority in which he argues that the trial court's assessments of his OV's 9, 13, and 14 constituted judicial fact-finding in violation of the Sixth Amendment under our Supreme Court's holding in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We find it unnecessary to address his

the scoring of PRV 7 and OV 13. We find the error harmless with regard to PRV 7, but conclude that sentencing is required because of error in scoring the OVs.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made." *People v Rhodes*, 495 Mich 938, 938; 843 NW2d 214 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. Defendant objected to the scoring of OV 14 at sentencing, and we review the scoring of that OV under the above standard. However, defendant did not object to the scoring of PRV 7 and OV 13; we thus review those scores for plain error. *Carines*, 460 Mich at 764.

The trial court assessed 10 points for PRV 7. A score of 10 points for PRV 7 is appropriate where "[t]he offender has 1 subsequent or concurrent conviction[.]" MCL 777.57(1)(b). "Score the appropriate point value if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed." MCL 777.57(2)(a). A felony-firearm conviction may not be scored for PRV 7. MCL 777.57(2)(b). Because the trial court properly vacated defendant's conspiracy conviction and because a score cannot be assessed for PRV 7 for felony-firearm, the trial court plainly erred in assessing 10 points to PRV 7. However, this error was not prejudicial because it did not affect his minimum guidelines range. MCL 777.61; *People v Rhodes (On Remand)*, 305 Mich App 85, 91; 849 NW2d 417 (2014).

The trial court assessed 25 points for OV 13. As relevant to this case, a score of 25 points for OV 13 is appropriate where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). When assessing points under OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in conviction." MCL 777.43(2)(a). Of the several crimes for which defendant was charged before his second-degree murder offense, only defendant's resisting and obstructing charge is a felonious criminal activity involving a crime against a person, MCL 750.479(2); MCL 777.16d; *People v Smith*, 423 Mich 427, 445; 378 NW2d 384 (1985). Additionally, defendant's felony-firearm and conspiracy charges related to Michael's murder are not considered felonious crimes against a person and thus cannot justify points for OV 13. See *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011); *People v Pearson*, 490 Mich 984, 985; 807 NW2d 45 (2012). Because defendant did not have three instances of felonious activity against a person within five years of his second-degree murder offense, 25 points could not be assessed for OV 13 under MCL 777.43(1)(c). Therefore, the trial court plainly erred in assessing 25 points for OV 13. *Carines*, 460 Mich at 763.

---

argument in light of our remand for resentencing. On remand, the sentencing court shall sentence defendant with knowledge that the sentencing guidelines are now advisory as stated in *Lockridge*. *Id*. at 397.

The trial court assessed 10 points for OV 14. A score of 10 points for OV 14 is appropriate where "[t]he offender was a leader in a multiple offender situation[.]" MCL 777.44(1)(a). "[A] 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting.' " *Rhodes (On Remand)*, 305 Mich App at 90, quoting *Random House Webster's College Dictionary* (2001). The mere fact that defendant talked with Garay about shooting members of WSB does not indicate by a preponderance of the evidence that defendant "played some role in guiding or initiating the transaction itself." *Id.* Therefore, we conclude that the trial court erred in assessing 10 points for OV 14. *Hardy*, 494 Mich at 438. Because scoring OVs 13 and 14 at zero points would affect defendant's sentencing guidelines range, we remand for resentencing. *Rhodes (On Remand)*, 305 Mich App at 91.

We affirm defendant's conviction of second-degree murder, vacate defendant's felony-firearm conviction, and remand for resentencing. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

-10-