*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
November 9, 2021

v

NICHOLAS ADAM RIDDLE,

      Defendant-Appellant.

No. 351884
Macomb Circuit Court
LC No. 2019-000937-FC

Before: GLEICHER, P.J., and K. F. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted Nicholas Riddle of second-degree murder, MCL 750.317, arising from the death of Jack Kitchen. Riddle contends that insufficient evidence supported that he acted with the requisite malice to commit murder. However, eye witnesses testified that Riddle kicked and punched Kitchen in the head as he lay unconscious on the ground. Riddle further argues that the trial court denied him the right to present a defense by improperly ruling that the prosecution could present a belatedly identified rebuttal witness if Riddle presented expert testimony that Kitchen's death was accidental. Yet Riddle never made an offer of proof regarding his expert's proposed testimony, and the prosecution witness's testimony was within the scope of proper rebuttal. Riddle further asks this Court to overrule binding precedent that eliminated the diminished capacity defense, a course we do not follow. We affirm.

## I. BACKGROUND

On the evening of October 4, 2017, several neighbors gathered at the mobile home of Gerald Forbes to drink alcohol and socialize. Kitchen became extremely intoxicated and inappropriately touched his host. Forbes asked Riddle and another guest, Jamel Bentley, to escort Kitchen outside. The men hoisted Kitchen up by the arms and guided him out. Jennifer Kadow, another partygoer, followed them. Initially, Riddle and Bentley planned to leave Kitchen lying in the yard. However, Kitchen grabbed Riddle's penis and Riddle punched Kitchen in the face, knocking him unconscious. Riddle and Bentley decided to move Kitchen and ultimately determined to put him on the other side of a four-foot-tall fence, in an overgrown field. The men either lifted and dropped Kitchen, or swung and tossed him over the fence.

-1-

Kitchen then regained consciousness and began mumbling. Riddle jumped over the fence and bent down to hear what Kitchen was saying. Kadow and Bentley described that Kitchen's words agitated Riddle. Riddle punched and kicked Kitchen in the head until he again lost consciousness. Eventually, Riddle, Bentley, and Kadow returned to Forbes's mobile home, but Riddle went outside several more times that evening. After one trip, Riddle returned with a knife that Kitchen had kept in his pocket. Riddle indicated that he threw away Kitchen's empty wallet and broke Kitchen's cell phone.[1]

Authorities found Kitchen the following morning and transported him to the hospital. The right side of Kitchen's face was red and swollen and his right eye was swollen shut. He remained unconscious for three weeks before dying from his injuries. The autopsy revealed injury to Kitchen's brain, as well as broken ribs. The medical examiner declared that Kitchen died from blunt traumatic injuries to the head. The examiner did not state on the record whether Kitchen died from his head hitting a rock or from being kicked and punched, nor did she rule out either cause.

Bentley ultimately pleaded guilty to assault with intent to commit great bodily harm for his role in Kitchen's death and agreed to testify against Riddle. The jury convicted Riddle of second-degree murder. Riddle now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Riddle challenges the sufficiency of the evidence supporting that he acted with the malice necessary to commit second-degree murder. When considering a sufficiency-of-the-evidence claim, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "Questions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence." *People v Carll*, 322 Mich App 690, 696; 915 NW2d 387 (2018). Thus, "conflicts in the evidence are resolved in favor of the prosecution." *Id*. (quotation marks and citation omitted).

To convict a defendant of second-degree murder, the prosecution must establish that the defendant caused a victim's death, "acted with malice," and "did not have lawful justification or excuse for causing the death." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. "[O]nly minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010).

Kadow and Bentley both testified that Riddle punched the extremely intoxicated Kitchen in the face—knocking him unconscious—after carrying Kitchen outside. Kadow and Bentley further described that Riddle jumped over the fence and kicked and punched Kitchen as he lay

---

[1] The jury acquitted Riddle of robbery charges stemming from these acts.

helpless on the ground in the field. Riddle did not stop until Kitchen was again rendered unconscious. Bentley claimed that Riddle did not stop until Bentley himself jumped the fence and pulled him off.

The prosecution was not required to prove that Riddle intended to kill Kitchen with this attack, only that he intended "to cause great bodily harm" or acted with "wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 464. Punching and kicking an extremely intoxicated person in the head while he lies helpless on the ground certainly could cause great bodily harm and a natural result of such an assault could be death. The jury could infer Riddle's malice on this ground alone. Additionally, swinging and tossing an unconscious person over a fence and letting him drop four feet to the ground could cause great bodily harm. Given the presence of rocks and chunks of concrete in the area, death was also a likely result of this activity. Viewing this evidence in the light most favorable to the prosecution, we have no ground to interfere with the jury's verdict.

III. REBUTTAL WITNESS

A

Further background is required to address Riddle's challenge to the court's ruling that the prosecution could present rebuttal testimony in the event Riddle presented an expert witness regarding Kitchen's cause of death.

The prosecution spent three days developing its case-in-chief before resting. When trial resumed the following day, but before the jury entered the courtroom, the prosecutor moved to reopen the proofs and to amend the state's witness list under MCL 767.40a so he could call Pastor Benjamin Harris to testify. According to the prosecution's offer of proof, Harris would testify that Riddle admitted to him that he hit and kicked Kitchen. The prosecutor conceded that he knew of this witness earlier, but had been unable to locate and interview him before the first day of trial.

Defense counsel vehemently opposed the prosecution's motion, arguing that he had already prepared his defense strategy based on the evidence presented in the prosecution's case-in-chief and that the lack of notice prevented him from preparing to effectively cross-examine Harris. When the court asked defense counsel to address the issue of good cause, counsel noted that this case was two years old and the prosecution had known about Harris for some time, yet it failed to include him on its witness list. Defense counsel also contended that admission of Harris's testimony would violate the clergy-parishioner privilege.

After further argument, inquiry into the officer-in-charge's attempts to locate Harris, and defense counsel's private interview of Harris, the court denied the prosecutor's motion to amend the witness list and reopen the state's case-in-chief. The court ruled, however, that the prosecutor could call Harris as a rebuttal witness to the defense expert witness—Dr. Bader J. Cassin—ruling as follows:

> I don't know what the Prosecution [sic] witness is going to say. But if hypothetically there's some testimony that the injuries done to the Decedent's head could have been caused by a rock, I think that in spite of the favorable ruling on

-3-

excluding this witness in the Prosecution's case in chief, you should be advised that this would seem to me to be an appropriate rebuttal witness for the Prosecution to call, because if the Defense's case in chief is that this could be explained by a different type of injury, that the kicking motion didn't result in death, then I think that it's not something that we would normally think of as a precise rebuttal witness to say, well he said this, well no, he didn't say this. But it does fall within the area of reasonable rebuttal, that now the Defense case is out there, the cause of death is hitting the head on the rock. I think that the Prosecution should be allowed to put in any evidence that it now has at its disposal to indicate that there were other blows.

As a direct result of the court's ruling, defense counsel decided not to call Dr. Cassin to the stand.

B

We review for an abuse of discretion a trial court's decision whether to admit rebuttal evidence. *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted). "Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v McGhee*, 268 Mich App 600, 638; 709 NW2d 595 (2005) (quotation marks and citation omitted).

Here, Riddle never presented an offer of proof regarding Dr. Cassin's potential testimony, arguably forfeiting his claim. In any event, it appears from the defense arguments that Dr. Cassin may have been prepared to testify that Kitchen's death was caused by hitting his head on a rock when he was thrown over the fence. This was contrary to the prosecution's theory that Kitchen died as a result of Riddle punching and kicking him in the head. If Dr. Cassin indeed testified that the instrument of Kitchen's death was a rock, evidence that Riddle admitted to kicking and punching Kitchen in the head both before and after this drop would have been admissible to contradict the defense theory on the cause of death.

A stronger rebuttal strategy may have been to recall the medical examiner to more specifically elucidate whether Riddle's assault could have caused Kitchen's fatal blunt force trauma to the head. But even if Kitchen's head injury was caused by an impact with a rock, that would be a natural and foreseeable consequence of Riddle's action—dropping an unconscious person over a four-foot-tall fence in the middle of the night. Further, there was already record evidence from Kadow and Bentley that Riddle punched Kitchen and knocked him unconscious before throwing Kitchen over the fence, and that Riddle subsequently jumped over the fence where he kicked and punched Kitchen in the head. Harris's testimony about Riddle's admission would have been cumulative. But ultimately, its cumulative nature did not weigh in favor of exclusion. *Figgures*, 451 Mich at 399 ("[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether

-4-

the evidence is properly responsive to evidence introduced or a theory developed by the defendant."). Riddle is not entitled to relief.[2]

## IV. DIMINISHED-CAPACITY DEFENSE

Finally, Riddle contends that he should have been permitted to present evidence that he suffered from post-traumatic stress disorder as a result of being sexually assaulted as a young man. This condition explained his reaction to Kitchen touching him inappropriately, Riddle asserts, and establishes "diminished capacity" to form the malicious intent necessary for murder. Riddle asks us to urge the Supreme Court to overturn its decision in *People v Carpenter*, 464 Mich 223; 627 NW2d 276 (2001), which eliminated the common-law diminished capacity defense in Michigan, as violative of his right to present a defense. We decline to do so.

Criminal defendants have the constitutional right to present a defense, "[b]ut this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Zitka (After Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349491); slip op at 4. The Legislature codified the affirmative defense of legal insanity in MCL 768.21a, providing that "[m]ental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." In *Carpenter*, 464 Mich at 237, our Supreme Court held that "the Legislature has demonstrated its policy choice that evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." Accordingly, "the defense of diminished capacity [is] no longer viable." *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008). Moreover, the *Carpenter* Court, relying on United States Supreme Court precedent, held that prohibiting the diminished-capacity defense did not violate a defendant's right to present a defense because, under the common law, a state was not required to recognize that defense. *Carpenter*, 464 Mich at 240. The Supreme Court has made its position clear and we may not grant the relief sought.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Amy Ronayne Krause

---

[2] Riddle only asks us to address whether Harris's testimony would have fallen within the scope of proper rebuttal testimony. Thus, we do not address whether the trial court erred by permitting the prosecution to call Harris as a rebuttal witness despite failing to satisfy MCL 767.40a(4).